557 So.2d 656 (1990)
Paul E. ANTHONY, Individually, and As Personal Representative of the Estate of Jacquelyn Anthony, Deceased, and As Guardian of Corletta Anthony, a Minor Daughter of the Deceased, Appellant,
v.
Paul SCHMITT, Michael Del Duca and General Accident Fire & Life Assurance Corporation, Appellees.
No. 89-01171.
District Court of Appeal of Florida, Second District.
February 28, 1990.
*657 Robert Alan Rosenblatt and Cynthia A. Greenfield of Robert Alan Rosenblatt, P.A., Miami, for appellant.
Robert E. Doyle, Jr., of Asbell, Hains, Doyle & Pickworth, Naples, for appellee Paul Schmitt.
John W. MacKay, Tampa, for appellees Michael Del Duca and Gen. Acc. Fire & Life Assur. Corp.
ALTENBERND, Judge.
The plaintiff appeals an order dismissing this wrongful death action for failure to prosecute and for failure of the plaintiff's attorney, Robert Alan Rosenblatt, to attend a status conference. Although we do not condone the numerous unexplained delays in the prosecution of this action, we must reverse this dismissal. The action cannot be dismissed for failure to prosecute because the record contains activity in the relevant year which is "something more than a mere passive effort to keep the suit on the docket of the court." Eastern Elevator, Inc. v. Page, 263 So.2d 218, 220 (Fla. 1972); Gulf Appliance Distribs. v. Long, 53 So.2d 706, 707 (Fla. 1951). The failure of the plaintiff's attorney to attend the status conference, while perhaps justifying sanctions against Mr. Rosenblatt, does not justify the dismissal of his client's long-delayed wrongful death action.
Jacquelyn Anthony died instantaneously in an automobile accident on June 22, 1979. She was twenty-nine years old. She was survived by her husband, Paul E. Anthony, and by her eight-year-old daughter, Corletta. Mr. Del Duca, who was driving a car titled in Mr. Schmitt's name, allegedly caused the accident.
The wrongful death action was promptly filed in the name of Mr. Anthony, as personal representative, in December 1979. At its inception, the case was delayed, or at least complicated, by the issue of the ownership of the car that Mr. Del Duca was driving. Mr. Schmitt claimed that he was merely the car's titleholder and that he had sold it to another person who was making installment payments and who was the beneficial owner. Extensive discovery was taken to determine whether Mr. Schmitt could be liable under the dangerous instrumentality doctrine.
Mr. Del Duca also delayed this case by the exercise of his fifth amendment rights and his general refusal to testify. Mr. Del Duca had consumed alcohol prior to this accident and was charged with manslaughter because of Mrs. Anthony's death. After one successful appeal, he was tried and convicted of reckless driving in June 1983. See Del Duca v. State, 422 So.2d 40 (Fla. 2d DCA 1982); Del Duca v. State, 459 So.2d 1046 (Fla. 2d DCA 1984). This court affirmed the conviction in October 1984.[1]
*658 Between October 1984 and March 1986, the record reflects that this case was set for trial on two occasions. A trial scheduled in November 1985 was continued for the convenience of Mr. Del Duca's attorney. A trial scheduled in March 1986 was continued to accommodate a vacation previously scheduled by Mr. Rosenblatt and to permit the trial judge to recuse himself.
Between March 1986 and April 1987, the record contains little to explain why this case was not prosecuted to judgment. In the spring of 1987, Mr. Anthony became terminally ill. He died in October 1987. In November 1987, the defendants moved to dismiss this action for failure to prosecute. Although there had been no record activity for more than a year before this motion, the trial court found that the personal representative's ill-health and ultimate death constituted good cause for the action to remain pending. See Schlakman v. Helliwell, Melrose & DeWolf, 519 So.2d 14 (Fla. 3d DCA 1987). The order denying this first motion to dismiss for failure to prosecute was filed on December 28, 1987.[2]
The next activity in the record occurred 364 days later. On December 27, 1988, the plaintiff filed a request to produce and a notice of service of interrogatories to the defendants. The request to produce asked the defendants to produce: 1) any statements obtained from the plaintiff or the plaintiff's family since December 1987; and 2) any documents that the defendants planned to introduce at trial which had been obtained from witnesses. The interrogatories asked the defendants: 1) to disclose any new witnesses; and 2) to provide addresses for two specific witnesses who had been previously disclosed without addresses. We note that both witnesses had testified in the second criminal trial and one, William Kehoe, had been a key witness for Mr. Del Duca concerning his sobriety.
Upon receipt of these discovery requests, the defendants again moved to dismiss the action for failure to prosecute. The defendants argued that the discovery requests were not meaningful acts of prosecution. Nevertheless, the defendants subsequently answered the discovery. On February 2, 1989, the trial court entered an order setting the case for status conference on March 1, 1989. A few days later, plaintiff's counsel filed a notice to set cause for trial.
Plaintiff's counsel failed to appear for the status conference. He had planned to appear by telephone; however, for reasons that appear disputed in the record, no telephone call was received by the court. The status conference took place without him, and the case was scheduled as the first case on the June 12, 1989, trial docket.
Following the status conference, the defendants scheduled their motions to dismiss for March 21, 1989. At that hearing, the trial court reviewed the dismal record of prosecution and determined that the discovery requests were not sufficient activity to justify the further prosecution of the wrongful death action. Without prior notice to the plaintiff and with no motion of record, the trial court also decided that the action should be dismissed because plaintiff's counsel failed to attend the status conference. Following entry of the order of dismissal on both alternative grounds, plaintiff's counsel filed a motion for rehearing with affidavits in an effort to explain his absence from the status conference. The trial court denied the motion for rehearing, and this appeal followed.

I. THE DISMISSAL FOR FAILURE TO PROSECUTE
Florida Rule of Civil Procedure 1.420(e) establishes a two-step test to determine *659 whether an action may be dismissed for failure to prosecute. First, the defendant must establish that there has been no record activity for the year preceding the motion. If there has been no record activity within the year, then the plaintiff is given an opportunity to establish good cause in writing why the action should remain pending. The analysis during the first step favors the plaintiff. So long as the plaintiff's efforts are not "mere passive effort[s] to keep the suit on the docket," the plaintiff prevails. Eastern Elevator, Inc. v. Page, 263 So.2d 218, 220 (Fla. 1972). During the second step, however, the analysis favors the defendant, and the plaintiff has a "high" burden to establish good cause. American Eastern Corp. v. Henry Blanton, Inc., 382 So.2d 863, 865 (Fla. 2d DCA 1980). This case involves an analysis of only the first step. The record is clear that the plaintiff would fail the second step if it were reached.
The courts have experienced difficulty describing the dividing line between marginally active prosecution and "mere passive" prosecution during the year preceding the motion to dismiss. Usually, the plaintiff can rely upon the activities of others to constitute record activity.[3] This activity is not created by the plaintiff, and the plaintiff is not typically obligated to evaluate its active/passive character. Nevertheless, motions for substitution of counsel,[4] motions to dismiss for failure to prosecute,[5] orders to show cause why the actions should not be dismissed,[6] and other actions by the court or the defendants[7] have been regarded as insufficient to pass the "mere passive" test. Activity by the plaintiff during the relevant year has been subjected to closer review because the plaintiff controls that activity and can intentionally misuse it to evade rule 1.420(e).
It is well established that documents filed of record concerning interrogatories, requests for production, and other discovery may constitute record activity for purposes of rule 1.420(e).[8] The difficult issue presented by this case is whether such documents, when filed by the plaintiff, are always sufficient record activity to restart the prosecution clock or whether the documents must have some degree of merit before they count as record activity. The plaintiff argues that essentially any document which is filed to reflect discovery is sufficient record activity to prevent dismissal of an action. The plaintiff maintains that the trial court does not have the authority or discretion to evaluate the true *660 practical value of the discovery as activity "designed to move the case forward toward a conclusion on the merits or to hasten the suit to judgment." Barnett Bank of East Polk County v. Fleming, 508 So.2d 718, 720 (Fla. 1987).
To a large degree, the plaintiff's attorney relies upon the third district's decision in Santa v. Thermo-Air Service, Inc., 506 So.2d 1170 (Fla. 3d DCA 1987). In that case, this same attorney filed discovery documents that were very similar to the documents filed in this case. Having received a favorable ruling concerning his tactics in the third district, plaintiff's counsel asks for the same gift from Santa in this district. While we are constrained to rule in favor of the plaintiff, we hold that trial courts do have the authority to decide whether the discovery is activity conducted with an end toward concluding the case on the merits, or whether it is merely activity taken in bad faith as a means to avoid the application of rule 1.420(e).
A tension, if not a direct conflict, exists between the decisions of the other districts on this issue. In Harris v. Winn-Dixie Stores, Inc., 378 So.2d 90 (Fla. 1st DCA 1979), the first district stated in dicta that certain interrogatories which merely restated questions asked in earlier interrogatories were only "passive efforts to keep the suit on the docket, and were not genuine measures to hasten the suit to judgment." Harris, 378 So.2d at 94.
Thereafter, in Karcher v. F.W. Schinz & Associates, 487 So.2d 389 (Fla. 1st DCA 1986), the first district held that a single interrogatory which asks a party to explain the basis for its denial of an earlier request for admissions is not sufficient action to avoid dismissal under rule 1.420(e). The first district approved a procedure by which the trial court examines the interrogatory to determine whether it is a "genuine" measure to hasten the suit to disposition. In this process, the trial court is also authorized to examine the "overall record" to determine whether the efforts to prosecute the case have been "very minimal." The first district's analysis seems to give the trial judge considerable discretion to subjectively determine the quality of an attorney's efforts to litigate his or her client's case. We believe this analysis gives too much undefined discretion to the trial court and creates a rule, the unpredictability of which is assured by the differences among judges.[9]
In contrast, the fourth district has attempted to create a "bright line rule." Philips v. Marshall Berwick Chevrolet, Inc., 467 So.2d 1068 (Fla. 4th DCA 1985). In Philips, the plaintiff's only activity during the relevant year was a two-question set of interrogatories which asked basic, but relevant, questions concerning the litigation. The fourth district decided that the first district's decision in Harris could be interpreted narrowly or broadly:

Harris, supra, can be narrowly read as holding only that repetitious or duplicitous discovery activity is insufficient. On the other hand, it could be broadly construed as holding that trial courts should examine the quality of discovery efforts to determine whether they advanced the cause.
Philips, 467 So.2d at 1069.
The fourth district chose the narrow interpretation which would permit dismissal only when the discovery was repetitious. In evaluating this test, we confess some difficulty in determining when interrogatories are "repetitious." Unlike the Federal Rules of Civil Procedure, the Florida Rules of Civil Procedure never require a party to update answers to interrogatories after material changes render them inaccurate. Compare Fla.R.Civ.P. 1.280(e) with Fed. R.Civ.P. 26(e). Thus, it is common for litigants to request updated answers concerning year-old interrogatories. We do not, as a general rule, regard such supplemental interrogatories as bad faith discovery.
*661 The fourth district's analysis actually appears narrower than even its narrow interpretation of Harris. Where the activity is "facially sufficient," the fourth district does not allow the trial court to inquire further.[10] The fourth district observes:
This rule is easy of application and relieves the trial court of the burden of determining whether just the right questions were propounded. We have no desire to send the trial courts into that quagmire.
Philips, 467 So.2d at 1070. Although we are certain that the first district had no desire to send its trial courts into a quagmire, we note that Karcher was decided subsequent to Philips. Karcher seems to allow the trial court to determine whether the plaintiff's attorney had asked "just the right questions."
While the fourth district's bright line approach is enticingly simple, it severely limits the trial court's authority to control litigants who flagrantly employ abusive discovery to prevent dismissal of their actions. If the trial court is not empowered to dismiss such actions, it can only clean its docket by forcing such cases to trial. It seems unfair and inefficient to waste valuable trial time on cases in which the plaintiffs have little or no interest in pursing their claims, when other plaintiffs are anxiously awaiting their day in court.
It should be noted that all lawyers have an ethical obligation to "make reasonable efforts to expedite litigation consistent with the interests of the client." R. Regulating The Fla. Bar 4-3.2. The comment to that ethical obligation states: "The question is whether a competent lawyer acting in good faith would regard the course of action as having some substantial purpose other than delay." To a large degree, the approach suggested by the first district in Karcher results in a dismissal of the client's lawsuit whenever the lawyer violates this ethical rule. We are not inclined to punish the client for most abuses authored by the lawyer. Although a grievance may be appropriate against an attorney who violates this rule, we question whether a dismissal of the client's lawsuit and a resulting legal malpractice action are the best methods to control this problem.
Rule 1.420(e) and its predecessors are primarily rules of judicial administration. Dismissals for failure to prosecute are intended to expedite the course of litigation and to keep the court docket as nearly current as possible. May v. State ex rel. Ervin, 96 So.2d 126 (Fla. 1957). A tidy docket is aesthetically pleasing and surely saves the taxpayers a few tax dollars. Nevertheless, the goals of this rule do not generally justify a deprivation of a citizen's access to Florida's courts merely because the plaintiff has selected an attorney too busy or too disorganized to prosecute the case properly.
A workable test is not easily fashioned for this problem. The trial court should have the power to dismiss an action after a year of meaningless activity when it is clear that the plaintiff is not prosecuting the case toward a resolution on the merits and when the plaintiff cannot express a valid reason for its delay.[11] On the other hand, the rule should be sufficiently predictable that attorneys do not suffer suits *662 for malpractice for engaging in delays which they reasonably expect to be appropriate.[12] Accordingly, we attempt to state a rule giving more discretion than is provided by the bright line rule in Philips, but less discretion than is provided by the "genuineness" rule in Karcher. We hold that a trial court may dismiss an action if the only activity within the relevant year is discovery activity by the plaintiff taken in bad faith merely as a means to avoid the application of rule 1.420(e) and without any design "to move the case forward toward a conclusion on the merits or to hasten the suit to judgment." Barnett Bank, 508 So.2d at 720. Typically, discovery should not be regarded as bad faith activity unless the discovery is frivolous or clearly useless in the further prosecution of the case. In many respects, this holding is similar to a requirement that the trial court strike the discovery as sham or pretextual record activity, allowing the trial court then to dismiss the action because more than one year has elapsed without record activity. Cf. Mikos v. Sarasota Cattle Co., 453 So.2d 402 (Fla. 1984) (a plaintiff's notice of trial will not bar dismissal for lack of prosecution if the plaintiff subsequently indicates unreadiness for trial); Fla.R.Civ.P. 1.150.
Under this standard, the plaintiff's attorney in this case avoids a dismissal, although by a thin margin. This discovery was clearly filed primarily to avoid the application of rule 1.420(e). Nevertheless, the interrogatory which asked for the undisclosed addresses of important witnesses does assist in moving the case toward a conclusion on the merits. It is not frivolous or clearly useless. The record does not support a determination that it was an activity taken in bad faith. Thus, the action cannot be dismissed for failure to prosecute. We decline to evaluate the merits of the other discovery requests.

II. THE DISMISSAL FOR FAILURE TO APPEAR
In light of the statute of limitations, the trial court's order of dismissal is a dismissal with prejudice for all practical purposes. While this court reviews such severe sanctions with great care, this court has been and remains unwilling to hold that such severe sanctions are never appropriate in cases of wilful and flagrant disobedience by an attorney. Lifeguard Corp. v. U.S. Home Corp., 429 So.2d 94 (Fla. 2d DCA 1983); Travelers Ins. Co. v. Rodriguez, 357 So.2d 464 (Fla. 2d DCA 1978). Typically, it is more appropriate for the trial court to require the trial attorney to atone for his own sins rather than visit them upon the attorney's unfortunate client. Beasley v. Girten, 61 So.2d 179 (Fla. 1952). In this case, for example, the only real party in interest is a teenage orphan who has waited eleven years for justice. Dismissing her action and forcing her to sue her own attorney for his error would not advance any policy which this court cares to promote.
The trial court's order does not contain findings of any wilful or flagrant or persistent disobedience by trial counsel, nor does the record support such findings. It is not even clear that the absence of plaintiff's counsel from the status conference had any detrimental effect upon that hearing. Accordingly, we cannot uphold this ground for dismissal. This reversal, however, is without prejudice to the trial court's right to conduct an appropriate hearing to determine whether lesser sanctions against Mr. Rosenblatt are appropriate.
Reversed and remanded for proceedings consistent herewith.
DANAHY, A.C.J., and LEHAN, J., concur.
NOTES
[1] On the motion of Mr. Del Duca, the trial court refused to allow the plaintiff to try this case during the pendency of the second criminal appeal. The civil case was continued, even though Mr. Del Duca had testified on his own behalf in the criminal case. The state had convicted Mr. Del Duca under a more difficult burden of proof without his cooperation. Presumably, the plaintiff could also have tried this civil case without Mr. Del Duca's cooperation. Thus, it appears that this case would have been resolved in October 1983 but for the continuance, which benefited only Mr. Del Duca.
[2] The plaintiff also filed a motion in early December 1987 to substitute Willie Anthony as the new personal representative. The record does not reflect any action on that motion. Thus, Paul Anthony is still the personal representative and plaintiff of record, even though he has been dead for over two years.
[3] Eastern Elevator, Inc. v. Page, 263 So.2d 218 (Fla. 1972) (defendant's interrogatories to plaintiff); Sittser v. General Motors Corp., 488 So.2d 577 (Fla. 4th DCA 1986) (sheriff's return of service is activity); Hale v. Hart Properties, 436 So.2d 1093 (Fla. 3d DCA 1983) (sheriff's return of service is activity); Phillips Petroleum Co. v. Heimer, 339 So.2d 284 (Fla. 3d DCA 1976), cert. denied, 348 So.2d 948 (Fla. 1977) (third-party defendant's action is sufficient to avoid dismissal).
[4] Gulf Appliance Distribs. v. Long, 53 So.2d 706 (Fla. 1951).
[5] Barnett Bank of East Polk County v. Fleming, 508 So.2d 718 (Fla. 1987).
[6] Nelson v. Stonewall Ins. Co., 440 So.2d 664 (Fla. 1st DCA 1983); Boeing Co. v. Merchant, 397 So.2d 399 (Fla. 5th DCA 1981), review denied, 412 So.2d 468 (Fla. 1982).
[7] Berenyi v. Halifax Hosp. Medical Center, 498 So.2d 655 (Fla. 5th DCA 1986) (order allowing attorney to withdraw). Smith v. DeLoach, 556 So.2d 786 (Fla. 2d DCA 1990).
[8] Eastern Elevator, Inc. v. Page, 263 So.2d 218 (Fla. 1972) (interrogatories); Q.I.P. Corp. v. Berger, 547 So.2d 1286 (Fla. 4th DCA 1989), review dismissed, 554 So.2d 1167 (Fla. 1989) (notice of taking deposition); Ferguson v. Carter, 520 So.2d 706 (Fla. 5th DCA), review denied, 529 So.2d 693 (Fla. 1988) (issuance of subpoena for production of documents); de Richemont v. Osias, 516 So.2d 100 (Fla. 4th DCA 1987) (two interrogatories); Liuzzo v. Crapo, 504 So.2d 480 (Fla. 1st DCA 1987) (request for production); Hunter v. Cal-Maine Foods, Inc., 477 So.2d 642 (Fla. 5th DCA 1985), review denied, 488 So.2d 67 (Fla. 1986) (notice to produce); Orange Elec. Co. v. Hughes Supply, Inc., 467 So.2d 479 (Fla. 5th DCA 1985) (notice of taking deposition, even though deposition not taken); Greenwell v. Cuiffo, 415 So.2d 901 (Fla. 3d DCA 1982) (interrogatories and notice of hearing); American Salvage & Jobbing Co. v. Salomon, 367 So.2d 716 (Fla. 3d DCA 1979) (interrogatories and notice of hearing on motion to compel); City of Jacksonville v. Hinson, 202 So.2d 806 (Fla. 1st DCA), cert. denied, 207 So.2d 688 (Fla. 1967) (interrogatories, objections to interrogatories, and notice of taking deposition).
[9] For example, we do not know the content of the requests for admission that were denied in Karcher. There certainly are occasions when a party would be well advised to follow up a denial of a request for admission with an interrogatory seeking an explanation of the denial. We question whether the value or "genuineness" of such an interrogatory should be affected by its timing.
[10] Perhaps the majority in Philips believed that repetitious or duplicative discovery could be facially insufficient. Subsequent decisions from the fourth district have dismissed actions in which the filed documents reflecting discovery would appear facially sufficient. See de Richemont v. Osias, 516 So.2d 100 (Fla. 4th DCA 1987); Fishe & Kleeman, Inc. v. Aquarius Condominium Ass'n, 503 So.2d 1272 (Fla. 4th DCA 1987), approved, 524 So.2d 1012 (Fla. 1988).
[11] A plaintiff's attorney may well have a valid reason, "consistent with the interests of the client," for delaying litigation. R. Regulating The Fla. Bar 4-3.2. For example, a party may be forced to file an action to preserve a claim which would otherwise be barred by the statute of limitations. Out of kindness to a financially struggling defendant, a plaintiff might validly choose to take minimal efforts to prosecute the case. Likewise, slow prosecution may be in the best interests of the plaintiff if a judgment would force a defendant into bankruptcy. We can foresee many circumstances in which it is necessary or appropriate to file a lawsuit and also necessary or appropriate to delay its prosecution. Although it may be a better practice for a party to obtain a stay order to accomplish this result, we are hesitant to encourage trial courts to dismiss actions in which the minimal activity may have a good faith explanation.
[12] Given that an attorney can avoid this dilemma simply by noticing the case for trial, Mikos v. Sarasota Cattle Co., 453 So.2d 402 (Fla. 1984), filing a motion for a pretrial conference, Fishe & Kleeman, or by obtaining a stay, our concern for the attorney is undoubtedly generous.