584 So.2d 587 (1991)
OFFICE DEPOT, INC., Appellant,
v.
Ellen MILLER, Appellee.
No. 90-1832.
District Court of Appeal of Florida, Fourth District.
July 24, 1991.
Joseph Consolazio, Jr., of Riley Knoerr & Consolazio, Fort Lauderdale, for appellant.
Ronald D. Poltorack of Law Offices of Ronald D. Poltorack, P.A., Fort Lauderdale, for appellee.
ANSTEAD, Judge.
Appellant, Office Depot, Inc., challenges the order granting appellee's motion for a new trial. We affirm.

FACTS
Ellen Miller sued Office Depot as a result of an alleged accident on Office Depot's premises on November 4, 1987, when a number of heavy boxes fell on her. She was 55 at the time and claimed the accident caused severe neck injuries. Office Depot responded that the boxes were light and caused her no injury.
*588 Based on Miller's testimony as well as that of a customer and an employee of Office Depot, the trial court directed a verdict in Miller's favor on the issue of liability. Miller testified as to the accident and the onset of severe problems with her neck. She admitted that prior to the accident, she had injured her shoulder and arm wallpapering her apartment. She also admitted that she had hurt her back moving a sofa bed, and again in 1988 in a car accident.
Dr. Stephen Silverstein testified by deposition that he treated Miller in 1986 for shoulder and back pain which she aggravated by wallpapering, but she mentioned nothing about her neck. Silverstein diagnosed tendonitis and treated the shoulder accordingly. Silverstein and members of his staff also saw Miller in connection with the subject accident and prescribed pain relievers and physical therapy.
Dr. Stephen Nemerofsky, an orthopedic surgeon, and Dr. Paul Gelety, a neurosurgeon, testified that Miller suffered severe neck injuries, including two herniated discs as a result of the Office Depot accident. Dr. Gelety had surgically repaired the discs but both doctors agreed she would be permanently impaired.
Dr. Gordon McAllister, an orthopedic surgeon, testified by deposition that he had examined Miller at the request of defense counsel and was of the opinion that the cervical disc condition preceded her Office Depot accident. He offered no opinion on any aggravating effect the accident may have had on her condition.
Dr. Paul Flatten, a neurologist, testified that he examined Miller at the request of defense counsel and was given test results and reports prepared by Miller's other doctors, including Dr. Silverstein. Flatten originally felt that the subject accident caused Miller's disc herniation and submitted a detailed medical report and testified in a pretrial deposition to that effect. However, before trial he was contacted by defense counsel and asked to again review Miller's medical history including the records of Dr. Silverstein. As a result, he stated that he had reversed his opinion, and now felt that she was suffering from progressive degeneration of the cervical discs wholly unrelated to the subject accident. He stated that although he had the medical reports all along, he had failed to review them before defense counsel's contact shortly before trial.
Miller's counsel objected to Flatten's testimony on the grounds that he had not been advised of Flatten's reversal of opinion. During a side-bar conference, defense counsel told the judge that he did not alert Miller of Flatten's changed testimony because nobody asked for such information. Defense counsel maintained that Miller would not be prejudiced since she could impeach Flatten with his prior contrary statements and written reports. While expressing concern, the trial judge allowed Flatten to testify, stating that he would entertain appropriate motions at a later time. On cross examination, Miller's counsel questioned Flatten extensively about his prior report and deposition testimony.
The jury returned a verdict finding that Office Depot's negligence did not cause Miller any injury.

NEW TRIAL ORDER
The trial judge granted Miller's motion for new trial, and in a separate order explained the reasons:
1. The new trial was granted pursuant to Rules 1.530 and 1.540, Fla.R.Civ.P., because of misrepresentations and other misconduct by Defendant with respect to obligations of the Defendant pursuant to Rule 1.360(b), Fla.R.Civ.P., coupled with the direct recanting of deposition testimony by Defendant's expert witness, Paul Flatten, M.D., at trial which totally surprised Plaintiff and resulted in a trial by ambush on the part of Defendant.
2. During the course of the pretrial proceedings, Defendant sought and obtained an order requiring Plaintiff to submit to an examination by Paul Flatten, M.D. Plaintiff was so examined by Dr. Flatten.
3. In order to discover the opinions of Defendant's expert, Paul Flatten, M.D., Plaintiff not only requested a copy of Dr. Flatten's report, but Plaintiff also deposed Dr. Flatten. This discovery revealed *589 that Dr. Flatten was of the opinion that a causal relationship existed between the accident in suit and the injuries, including an operated herniated disc.
4. Notwithstanding the deposition testimony and report of Dr. Flatten, Defendant knowingly presented testimony at trial by Dr. Flatten that in fact no causal relationship existed between the accident in suit and the herniated disc. Plaintiff was understandably surprised by the this (sic) total change in opinion by Defendant's expert and it was improper for Defendant to use this testimony when the "detailed written report of the examiner setting out his findings, including results of all tests made, diagnosis and conclusions" which Defendant was required to give to Plaintiff pursuant to Rule 1.360(b), Fla.R.Civ.P., failed to contain any finding or conclusion that injury and the deposition testimony affirmatively contradicted the trial testimony.
5. Moreover, absent the surprise recantation by Dr. Flatten, there was no evidence whatsoever in the record at trial to support the jury verdict. The jury verdict was rendered expressly on the issue of damages including proximate causation because there was a direction of verdict on the issue of the negligence of the Defendant. Therefore, the verdict was not only against the manifest weight of all properly admissible evidence, but there was no proper evidence whatsoever of a lack of proximate causation.
6. Under these facts and circumstances, the Court is firmly of the mind that justice requires that a new trial be afforded to Plaintiff. Any other result would serve only to sanction misconduct, the element of surprise and the conduct of trial by ambush which this Court refuses to condone.

LAW
Ordinarily, trial judges enjoy broad discretion in addressing motions for new trial. Baptist Memorial Hosp., Inc. v. Bell, 384 So.2d 145 (Fla. 1980). However, the latitude afforded them because of their superior vantage point during trial is circumscribed when the motion concerns purely legal matters. American Employers' Insur. Co. v. Taylor, 476 So.2d 281 (Fla. 1st DCA 1985); City of Hollywood v. Jarkesy, 343 So.2d 886 (Fla. 4th DCA 1977). Thus, the closer an issue comes to being purely legal in nature, the less discretion a trial court enjoys in ruling on a new trial motion. It has also been held that a stronger showing of abuse of discretion is required to overturn an order granting a new trial than an order denying a new trial. Cloud v. Fallis, 110 So.2d 669 (Fla. 1959).

THE SURPRISE TESTIMONY
Since the trial court's order was substantially predicated on the admission of the changed opinion testimony of Dr. Flatten, we initially consider that issue. In Binger v. King Pest Control, 401 So.2d 1310 (Fla. 1981), the supreme court explained that the rules governing discovery and pretrial procedure are intended to eliminate surprise and to assist our justice system in arriving at the truth in a fair and orderly fashion. In the case of witnesses who are not disclosed in accordance with pretrial procedures, the court held that a trial judge has broad discretion in deciding whether to permit or to exclude the witness' testimony. The court emphasized that the rules should be construed and utilized to avoid "trial by ambush." Both this court and the supreme court held in Binger that the trial court abused its discretion in allowing an undisclosed rebuttal witness to testify. A new trial was ordered.
In exercising discretion, the Binger court directed trial courts to consider: (1) the objecting party's ability to cure the prejudice or independent knowledge of the undisclosed witness' existence; (2) the possible disruption of the orderly and efficient trial of the case; and (3) the calling party's motive in failing to disclose the witness' name. The underlying concern is whether the objecting party will be unprepared for and surprised in fact by the undisclosed witness' testimony. See Lugo v. Fla. East Coast Railway Co., 487 So.2d 321 (Fla. 3d DCA 1986) (trial judge abused discretion in excluding undisclosed witness's testimony *590 where objecting party not surprised in fact, there was adequate time to correct the prejudice; and there was no showing failure to list witness motivated by bad faith). Ultimately, the Binger court directed, the witness should be permitted to testify only if his testimony will not endanger the fairness of the proceeding.
Ideally, applying the Binger analysis, a trial court will be able to deal with the situation in a way that any prejudice will be minimized and a fair trial will be assured to both sides. Once deciding on a course of action, it should be the rare case that requires the issue to be revisited after trial. However, the reality is that many situations may arise that will not permit a perfect solution and the trial court will be faced with the difficult task of second guessing its own earlier solution to the problem.
Because Rule 1.280(e), Florida Rules of Civil Procedure, excuses parties from supplementing discovery responses which are complete when made, Office Depot contends that it was free to direct Dr. Flatten's attention to any reports or records already in his possession and to encourage him to change his opinion without alerting Miller.[1] However, the trial judge found that appellant violated Rule 1.360(b), requiring the party requesting a medical examination of another party to produce upon request detailed reports of the examiner, including diagnoses and conclusions. Office Depot asserts that it fully complied with this rule when it provided Flatten's initial detailed report and that ended its obligation. We do not believe this interpretation of Rule 1.360(b) is reasonable or consistent with the supreme court's admonition against "trial by ambush" in Binger.
In a footnote in Binger the supreme court noted:
Nothing in this concept of trial practice requires that one party disclose his case to the other in full. We are dealing only with an exchange of witnesses' names. It remains the obligation of each attorney to learn through interrogatories, depositions or any other means he selects, the nature of the testimony which will be offered and the extent to which he intends to meet or deal with it at trial. Negligence in discovery is not an issue in this case.
401 So.2d at 1313 n. 7. Parenthetically, we note that as in Binger, negligence in discovery is also not an issue here. It is undisputed that Miller did everything in her power to discover the identity and opinions of Office Depot's experts. Clearly, the purpose of Rule 1.360(b) is to require disclosure of the opinions of expert witnesses so that the other side may take those opinions into account in defending or prosecuting the case. about, much less one that is a complete reversal of the opinion it has been provided.
As Judge Grimes stated in Colonnell v. Mitchels, 317 So.2d 799 (Fla. 2d DCA 1975), the purpose of requiring that physical examinations and discovery be completed by the time of the pretrial conference is to avoid surprise at trial. In Colonnell, a medical witness changed his opinion based upon a physical examination that took place after the discovery cut-off. A new trial was ordered by the appellate court because of the surprise to the other side when the witness was permitted to testify to his changed opinion at trial. Also see Smith v. University Medical Center, 559 So.2d 393 (Fla. 1st DCA 1990).
We agree with the trial court that the spirit and purpose of Rule 1.360(b) requires the disclosure of a substantial reversal *591 of opinion such as occurred here, if a party intends to offer that changed opinion at trial. Parties who fail to make such disclosure do so at their peril, depending on the circumstances of the particular case. In this case, allowing the presentation of the changed opinion was tantamount to permitting an undisclosed adverse witness to testify as in Binger.
Office Depot also contends that Miller was not prejudiced because she had the opportunity to impeach Flatten with his prior inconsistent reports and statements. However, the trial judge concluded that appellant's counsel's tactics[2] denied appellee the full disclosure necessary for a fair trial. The court implied that had Miller simply been given a proper warning before trial that Flatten had changed his testimony any prejudice could have been minimized. Cf. Lugo. Instead, defense counsel allowed Miller to present her entire case in chief, wholly unaware that the defense's case would include critical live testimony by an expert negating Miller's claim. Miller asserts that her trial strategy was planned and executed on the reasonable assumption that Flatten would either not testify, or his testimony would be favorable to her case. She notes that her medical witnesses had already testified and been released from subpoenas at the time Flatten's surprise testimony was presented towards the end of the trial. We believe these circumstances support the trial court's grant of a new trial.
In summary, we conclude that appellant failed to demonstrate that the trial court abused the broad discretion accorded by Binger and its decision comports with the purpose of our pretrial rules and the spirit of Binger. While judicial economy may have been served by adhering to the decision made at trial to deal with the problem, justice is ultimately better served even if a new trial must be held to insure fairness to the litigants. The trial court's action here sends out a strong message to those who do not adhere to the code of fair play advanced by Binger. Serious violations of the pretrial disclosure rules may result in the exclusion of important evidence, and may, in extreme circumstances, lead to the grant of a new trial.
In light of the foregoing, we need not decide the alternate basis for granting a new trial. We affirm the order for a new trial.
WARNER, J., and STEVENSON, W. MATTHEW, Associate Judge, concur.
NOTES
[1] Although appellant offers Anthony v. Schmitt, 557 So.2d 656 (Fla. 2d DCA 1990) as support, this case is not really on point to the issue raised here. Anthony involved an issue of whether the filing of supplemental interrogatories, apparently duplicating matters already covered in prior interrogatories, was sufficient to prevent an involuntary dismissal for failure to prosecute. Since Florida's discovery rules do not require supplemental responses, the Anthony court concluded that such requests may be proper to achieve full disclosure. Here, there was no request for supplemental discovery. However, it is unlikely that such would have uncovered Flatten's changed opinion since he formulated the new opinion close to trial and well after the discovery cut off date in the pretrial order.
[2] That appellant's counsel asked Flatten to review Silverstein's reports so close temporally to trial is susceptible to several conclusions. The more innocuous is that Flatten simply neglected his responsibility to review all pertinent records, which he readily admitted at trial. Another is that defense counsel neglected his obligation to be certain that the doctor had reviewed the reports defense counsel furnished him. The trial judge, however, found that appellant's counsel waited until shortly before trial to ask Flatten to reconsider documents he knew Flatten had in his possession all along, in an effort to catch Miller by surprise at trial. See Lugo (implying a showing of bad faith in failure to disclose witness' name might support new trial). There is no clear proof in the record to support such a conclusion. However, because of our agreement with the trial court's conclusion that Binger and Rule 1.360(b) required disclosure of Flatten's reversal of opinion, such a conclusion is unnecessary. While it may not have been improper for Flatten to reconsider his opinion in light of ignored but existing reports, what was unacceptable was the failure to inform Miller of the change.