745 So.2d 368 (1999)
Carlos SUAREZ-BURGOS, Mario Suarez-Burgos and Government Employees Insurance Company, Appellants,
v.
Amy MORHAIM, Appellee.
No. 97-4160.
District Court of Appeal of Florida, Fourth District.
October 6, 1999.
Rehearing Denied December 21, 1999.
*369 Angela C. Flowers and Caryn Bellus-Lewis of Kubicki Draper, Miami, for appellantsCarlos Suarez-Burgos and Mario Suarez-Burgos.
Terry L. Watson of the Law Office of Gary E. DeCesare, Fort Lauderdale, for appellantGovernment Employees Insurance Company.
Philip M. Burlington of Caruso, Burlington, Bohn & Compiani, P.A., West Palm Beach, and E. Hugh Chappell, Jr. of E. Hugh Chappell, Jr., P.A., Fort Lauderdale, for appellee.
WARNER, C.J.
In this appeal appellant claims that the trial court abused its discretion in granting a post-trial motion for mistrial because of the introduction of new opinions of an expert at trial without notice to the opposing party. We hold that the trial court was within its broad discretion in granting a new trial based upon prejudice and surprise where the opinions of the expert, who had performed an examination of the plaintiff pursuant to Florida Rule of Civil Procedure 1.360(a), were not made known to the opposing party until the expert testified at trial.
Plaintiff/appellee sued defendant/appellant for injuries suffered in a rear-end collision which was the fault of the defendant. As plaintiff's major complaint concerned a temporomandibular joint injury ("TMJ"), defendant requested and received a compulsory medical examination, performed by Dr. Robert Mack, a dentist. Dr. Mack's reports were furnished to plaintiff as was required by Rule 1 .360(b).
Plaintiff's attorney took the deposition of Dr. Mack. At his deposition, the doctor agreed that plaintiff exhibited signs of TMJ, the most distinctive being a click in the jaw which was not reported until several months after the accident. Although plaintiff's general physician recorded in her medical records that she had experienced some symptoms often related to TMJ before the accident, including headaches, neck, ear, throat and stomach pain, Dr. Mack agreed that these could also be related to causes other than TMJ, such as a viral infection or job stress. Dr. Mack did not offer an opinion in his report or at *370 the deposition that her TMJ condition was unrelated to the accident.
After plaintiff produced evidence at trial that she suffered a TMJ injury as a result of the accident and that the condition was permanent, the defense called Dr. Mack. Plaintiffs attorney advised the court that he was concerned that Dr. Mack may offer opinions other than those contained within his report and deposition. His specific concern was that Dr. Mack might offer an opinion that the TMJ was unrelated to the accident. His concern was not unfounded, as Dr. Mack testified at trial that in his opinion the plaintiff did not suffer a TMJ injury due to the collision and that he believed her symptoms were preexisting with psychological overlay. Plaintiff cross-examined the doctor and discovered that Dr. Mack had been provided additional medical records of the plaintiff which he read just an hour before his testimony, and that some of his conclusions were based on these newly supplied reports. Plaintiffs attorney objected, moved to strike the doctor's testimony, and moved for a mistrial. The trial court reserved ruling on the motion for mistrial.
After a verdict was returned in favor of the plaintiff, but finding plaintiff suffered no permanent injury as a result of the accident and awarded her only past medical expenses, the plaintiff renewed her motion for mistrial in a post-trial motion. The trial court granted the motion, thus requiring a new trial. The defendants appeal that order.
Reversal of an order granting a motion for new trial or post-verdict mistrial is left to the very broadest discretion of the trial court. See Allstate Ins. Co. v. Manasse, 707 So.2d 1110, 1111 (Fla.1998). In Castlewood International Corp. v. La-Fleur, 322 So.2d 520, 522 (Fla.1975), the court explained the standard of review of such decisions:
Since at least 1962, it has been the law of Florida that a trial court's discretion to grant a new trial is "of such firmness that it would not be disturbed except on clear showing of abuse. ..." Cloud v. Fallis, 110 So.2d 669, 672 (Fla.1959). A heavy burden rests on appellants who seek to overturn such a ruling, and any abuse of discretion must be patent from the record. See Hendricks v. Dailey, 208 So.2d 101, 103 (Fla.1968); Russo v. Clark, 147 So.2d 1, 3-4 (Fla.1962).
(Emphasis supplied) (footnote omitted). Because we cannot find that the trial court's decision was completely arbitrary and fanciful or that no reasonable judge would agree with it, we are required to affirm.
The case most closely analogous to the instant case is Office Depot, Inc. v. Miller, 584 So.2d 587 (Fla. 4th DCA 1991). That case involved the deposition of an expert who conducted an examination of the plaintiff pursuant to Florida Rule of Civil Procedure 1.360(a) and produced a report pursuant to Rule 1.360(b). Our court stated with respect to the rule:
Clearly the purpose of Rule 1.360(b) is to require disclosure of the opinions of expert witnesses so that the other side may take those opinions into account in defending or prosecuting the case. A party can hardly prepare for an opinion that it doesn't know about, much less one that is a complete reversal of the opinion it has been provided.
. . . .
We agree with the trial court that the spirit and purpose of Rule 1.360(b) requires the disclosure of a substantial reversal of opinion such as occurred here, if a party intends to offer that changed opinion at trial. Parties who fail to make such disclosure do so at their peril, depending on the circumstances of the particular case. In this case, allowing the presentation of the changed opinion was tantamount to permitting an undisclosed adverse witness to testify as in Binger.

Id. at 590-91 (emphasis in original). Rule 1.360(b) requires the disclosure of all opinions and conclusions reached by the expert *371 which the expert plans to testify to at trial. There is no requirement or need for the opposing party to take the deposition of every expert where the party has been provided a report pursuant to the mandatory requirements of Rule 1.360(b). Nor is it necessary to exhaustively question the expert to discover whether the expert has come to other significant opinions not expressed in the report. Indeed, such requirements would fuel the ever increasing cost of litigation. Thus, a litigant who receives a report of the examination conducted under the rule should be confident that the report lists all of the major conclusions of the examining expert. See Office Depot, Inc., 584 So.2d at 590. In this case, Dr. Mack opined at trial that the plaintiff did not suffer permanent injury as a result of the accident. This opinion was the most significant opinion in the case. Thus, the plaintiff could claim surprise under Binger v. King Pest Control as a result of Dr. Mack's failure to include this opinion in his report. See 401 So.2d 1310, 1314 (Fla.1981) (testimony of a witness can be excluded where witness was not disclosed causing surprise to opposing party); see also Department of Health & Rehabilitative Servs. v. J.B., 675 So.2d 241, 244 (Fla. 4th DCA 1996) (recognizing Binger applies equally to situations involving the presentation of an undisclosed change of opinion).
Appellant cites Ganey v. Goodings Million Dollar Midway, Inc., 360 So.2d 62 (Fla. 1st DCA 1978), as being analogous. It is distinguishable and was decided well before the Binger case. In Ganey, plaintiff's treating physician testified at trial that her injury was permanent and a result of the accident at question in the case. The defendant moved for a new trial, claiming surprise as to this testimony which had not been revealed in pretrial discovery even though the doctor's deposition had been taken. The trial court granted the motion for new trial. The appellate court reversed because the plaintiff had never asked in the deposition whether she had suffered a permanent injury. See id. at 63. Thus, defendant could not claim surprise. However, the court noted specifically that the defense had not sought a physical examination pursuant to Rule 1.360(a). Ganey did not deal with the testimony of an expert who performed a compulsory medical examination and was required to furnish the opposing party with a report of the expert's opinions.
Moreover, in support of the trial court's order, we think it is arguable that the doctor's testimony and reports misled the plaintiff as to the doctor's opinion of permanency. Both in his report and in his deposition testimony, he noted that the plaintiff exhibited TMJ symptoms which began several months after the accident. While there were symptoms of headaches, neck, ear, throat, and stomach pain recorded by her general physician prior to the accident, Dr. Mack testified that if those were based upon physical findings of an ear infection or viral infection or related to job stress, those pre-accident complaints would have nothing to do with TMJ syndrome. In addition, Dr. Mack found a discernable click in her jaw that was not reported until several months after the accident. The click was most likely caused by a dislocation in the jaw.
Dr. Mack's review of the records of other treating physicians revealed a consistent reporting of TMJ symptoms following the accident. At the conclusion of the record review, Dr. Mack stated that "a determination needs to be made as to whether this is merely a physical finding [the click] or whether an internal derangement is potentially etiologic in the patient's complaints." One could glean from the report that Dr. Mack clearly found clicking in the temporomandibular joint, but he was still undecided as to whether the TMJ problem was causing the plaintiff's varied physical complaints of pain. Dr. Mack's subsequent reports indicated that other doctors found no complaints of TMJ disorder until after the accident.
*372 At trial, Dr. Mack for the first time unequivocally testified that the plaintiff received no permanent injury as a result of the accident in question in this suit. Moreover, he admitted that some of his conclusions were based on material he had seen just hours before testifying. We think that this modification could be viewed as either a reversal of prior opinions, or the admission of opinions not contained in the reports furnished pursuant to Rule 1.360(b). In either case, the plaintiff could claim surprise and prejudice, which would support the trial court's order granting the renewed motion for mistrial. As such, appellants have failed to show that the trial court's ruling was such a patent abuse of the broad discretion afforded to it that reversal of its ruling is required. We therefore affirm.
TAYLOR, J., concurs.
SCHACK, LARRY, Associate Judge, dissents with opinion.
SCHACK, LARRY, Associate Judge, dissenting.
I respectfully dissent.
Appellants, the defendants below, appeal the trial court's order granting the plaintiffs motion for a mistrial. I include my analysis of the record at length since my reading of it differs in material respects from that of the majority.
On May 25, 1994, the plaintiff was driving a small pickup truck in a funeral procession. The defendant, Carlos Suarez-Burgos ("Carlos"), driving a larger pickup truck, struck the plaintiffs vehicle in the rear. The plaintiff sued Carlos, Mario Suarez-Burgos (the owner of the truck driven by Carlos), and an insurance carrier for personal injuries. The plaintiffs primary injury claim was based on an allegation that, as a result of the collision, she suffered a temporomandibular joint ("TMJ") injury.
The trial court entered a pretrial order requiring the disclosure by each party of their trial witnesses. The order did not require the exchange of any reports or opinions prepared by, or held by expert witnesses. In response to the pretrial order, the defendants disclosed Dr. Robert Mack as one of their witnesses. Dr. Mack was offered as an expert witness in the field of dentistry. Dr. Mack conducted a compulsory medical examination ("CME") of the plaintiff before trial on the subject of the claimed TMJ injury.
Ten months before trial, the plaintiff deposed Dr. Mack. Prior to that date, the plaintiff received Dr. Mack's report of the CME he conducted, as well as additional reports he prepared in which he discussed his evaluation of the other medical and dental evidence in the case.
At trial, the plaintiff introduced evidence that she suffered from a TMJ injury, that it was caused by the collision at issue, that the injury was permanent, and it would require surgery to provide relief. After the plaintiff rested, and prior to Dr. Mack testifying for the defense, counsel for the plaintiff advised the trial court that he was concerned that the doctor might testify to opinions other than those contained within his reports and given at his deposition. Plaintiffs counsel advised the trial court "[w]hat I don't want to be is surprised by Dr. Mack coming in here and saying that her TMJ's [sic] not related to this accident, because it's beenthere's been no opinion of that."
The trial court permitted Dr. Mack to testify. During that testimony the doctor opined that the plaintiff did not suffer a TMJ injury due to the collision, that her symptoms of pain were preexisting, that psychological factors may have played a role in the her pain complaints, that she did not suffer a permanent injury as a result of the collision, and she did not require surgery as a result. There was no objection voiced by plaintiffs counsel during the direct examination.
Plaintiffs counsel began his cross-examination and learned that Dr. Mack had read records in the case provided to him as *373 recently as one hour prior to testifying. It was at that point that plaintiffs counsel objected, moved to strike the doctor's testimony, and moved for a mistrial. The trial court reserved ruling on the motion for mistrial. A verdict was returned in favor of the plaintiff awarding her past medical expenses but finding there was no permanent injury. The plaintiff renewed her motion for mistrial in a post-trial motion. The motion was granted by the trial court. This appeal followed.
The trial court's order granting the mistrial had the effect of ordering a new trial. Our Supreme Court in Allstate Insurance Co. v. Manasse, 707 So.2d 1110 (Fla.1998), delineated the scope of review of an order granting a new trial.
The judicial determination on a motion for a new trial is a discretionary act of the trial court:
When a motion for new trial is made it is directed to the sound, broad discretion of the trial judge, who because of his contact with the trial and his observation of the behavior of those upon whose testimony the finding of fact must be based is better positioned than any other one person fully to comprehend the processes by which the ultimate decision of the triers of fact, the jurors, is reached.

Cloud v. Fallis, 110 So.2d 669, 673 (Fla. 1959) (citations omitted). We reiterated the rule recently in State v. Spaziano, 692 So.2d 174 (Fla.1997), wherein we stated:
A motion for a new trial is addressed to the sound judicial discretion of the trial court, and the presumption is that [it] exercised that discretion properly. And the general rule is that unless it clearly appears that the trial court abused its discretion, the action of the trial court will not be disturbed by the appellate court.

Id. at 177 (quoting Henderson v. State, 135 Fla. 548, 562, 185 So. 625, 630 (1938) (Brown, J., concurring specially)). The appellate court should apply the reasonableness test to determine whether the trial judge abused his discretion, to wit, "discretion is abused only where no reasonable [person] would take the view adopted by the trial court." Huff v. State, 569 So.2d 1247, 1249 (Fla.1990).
Id. at 1111. See Nicaise v. Gagnon, 597 So.2d 305 (Fla. 4th DCA 1992) (treating an order granting a mistrial as an order granting a new trial). While I agree with the majority that a trial court has broad discretion in deciding whether to grant a new trial, or in this case a post-verdict mistrial, there must be some basis in law and fact to do so. I can not find any such basis in the record of this case.
The trial court's order does not recite the basis for granting the mistrial. The record before this court, however, reflects that in her post-trial motion the plaintiff argued to the trial court that she was surprised and prejudiced by what she claimed was Dr. Mack's changed opinions in three subject areas: (1) causation, (2) permanency, and (3) the need for surgery.[1]
In Binger v. King Pest Control, 401 So.2d 1310 (Fla.1981), our supreme court discussed the broad discretion possessed by trial courts to exclude the testimony of witnesses who are not disclosed to opposing counsel before trial, in violation of a pretrial order. In Binger the trial court issued a pretrial order requiring the parties to disclose their witnesses to each other before trial. The defendant did not *374 disclose its accident reconstruction expert. At trial, the defendant argued that it was not required to disclose an impeachment or rebuttal witness. The supreme court held "that a pretrial order directing the parties to exchange the names of witnesses requires a listing or notification of all witnesses that the parties reasonably foresee will be called to testify, whether for substantive, corroborative, impeachment or rebuttal purposes." Id. at 1313.
As discussed above, the plaintiff was required to undergo a CME with Dr. Mack. Florida Rule of Civil Procedure 1.360(b)(1) provides that upon demand by a party who was requested or required to undergo a CME, that party must be provided with a "detailed written report of the examiner setting out the examiner's findings, including results of all tests made, diagnosis, and conclusions, with similar reports of all earlier examinations of the same condition." Prior to trial, plaintiff's trial counsel possessed the reports created by Dr. Mack as a result of that examination.
The holding in Binger has been extended to situations where the presentation of a changed opinion is equivalent to permitting an undisclosed adverse witness to testify. See Department of Health & Rehabilitative Servs. v. J.B. 675 So.2d 241 (Fla. 4th DCA 1996); Grau v. Branham, 626 So.2d 1059 (Fla. 4th DCA 1993); Office Depot v. Miller, 584 So.2d 587 (Fla. 4th DCA 1991).
In Office Depot, a neurologist conducted a medical examination of the plaintiff on behalf of the defendant. The doctor opined in his detailed report that the accident in that case caused Miller's herniated disc. He also testified to that opinion in deposition. Shortly before trial, the doctor changed his opinion and determined that the plaintiffs complaints were unrelated to the accident. The defense never advised the plaintiff of the changed opinion, and called the doctor to testify to his new opinion at trial. This court held:
We agree with the trial court that the spirit and purpose of Rule 1.360(b) requires the disclosure of a substantial reversal of opinion such as occurred here, if a party intends to offer that changed opinion at trial. Parties who fail to make such disclosure do so at their peril, depending on the circumstances of the particular case.
Office Depot, 584 So.2d at 590-591.
I respectfully disagree with the majority's conclusion that Binger and Office Depot support the trial court's order in this case. The concept of compulsory disclosure of witnesses and evidence is not without its limits. The court in Binger made the limit of its holding clear:
Nothing in this concept of trial practice requires that one party disclose his case to the other in full. We are dealing only with an exchange of witnesses' names. It remains the obligation of each attorney to learn through interrogatories, depositions or any other means he selects, the nature of the testimony which will be offered and the extent to which he intends to meet or deal with it at trial. Negligence in discovery is not an issue in this case.
Binger, 401 So.2d at 1313 n. 7. Further, this court pointed out in Office Depot that "negligence in discovery is also not an issue []. It is undisputed that [the plaintiff] did everything in her power to discover the identity and opinions of Office Depot's experts." Office Depot, 584 So.2d at 590. While negligent discovery was not an issue in Binger, Office Depot, J.B., or Grau, it is here.
Plaintiff's trial counsel was on notice prior to the trial that Dr. Mack possessed opinions on each of the three subject areas at issue. The doctor discussed the following in his reports:
(a) The plaintiff had symptoms of myofacial pain syndrome prior to the collision;

*375 (b) The plaintiff had preexisting complaints of headache, neck pain and ear pain;
(c) The plaintiff's predominant post-collision complaints are found repeatedly in her medical records prior to the date of the collision;
(d) There was no evidence to establish that the plaintiff's complaints concerning her jaw were of recent origin due to the collision;
(e) There were no complaints of clicking in the plaintiff's TMJ until seven months after the collision;
(f) He believed that psychological factors could have had a substantial influence on the plaintiff's clinical complaints;
(g) The plaintiff claimed her symptoms were improving substantially over time; and
(h) There was no evidence of the TMJ disorder in the records of Dr. Suite.[2]
The doctor's statements in the reports should have caused counsel at deposition to specifically delve into his opinions on causation, permanency, and the need for surgery. In fact, plaintiff's counsel did discuss some of those issues with Dr. Mack at deposition, although not with the type of questions or detail that would have prepared counsel to deal with Dr. Mack's testimony at trial. For example, counsel asked Dr. Mack about the significance of hearing a clicking sound on the right side of the plaintiff's TMJ when she opened her mouth. That clicking sound was key to the plaintiff's claim of a TMJ injury. Dr. Mack opined that the sound was likely due to a dislocation of the plaintiff's right articular disk, but he advised counsel he would need an MRI to be certain. The doctor was not certain whether the plaintiff's articular disk displacement was the cause of her symptoms. At the end of the deposition, plaintiffs counsel advised the doctor that he possessed MRI films; however, there is no indication that he permitted the doctor to examine them. Counsel apparently did show the MRI report to Dr. Mack at the conclusion of the deposition. Inexplicably counsel did not question the doctor about the contents of that report.[3]
During the motion in limine raised by plaintiffs counsel just prior to Dr. Mack's testimony, the trial court inquired of all counsel as follows:
THE COURT: [B]ut was he ever asked either in the reports or in the deposition the plain simple question, "Doctor, do you relate this lady's present TMJ problem to the accident of May 25th, 1994"?[4] [sic]
During plaintiff's counsel's lengthy response, the trial court's question was never answered. The trial court's inquiry was an appropriate one. A series of basic questions posed to Dr. Mack at deposition, specifically asking the doctor his opinions on the three subject areas and the reasons for those opinions, would have prepared the plaintiff for the doctor's trial testimony.[5] I find that there was negligent discovery by the plaintiffs trial counsel in this case. Further, in comparing Dr. Mack's deposition and reports with his trial testimony, I do not believe that the trial testimony constituted "a substantial reversal *376 of opinion."[6]See Office Depot, 584 So.2d at 590-91.
From my review of the record, the plaintiff cannot claim surprise or prejudice. As a result of the content of Dr. Mack's reports, and the responses to questions asked at deposition, plaintiff's counsel was on notice that he needed to prepare for the opinion testimony that Dr. Mack ultimately offered. Counsel is chargeable with what he actually knew, and reasonably should have known, through the exercise of due diligence in trial preparation. An attorney cannot claim surprise or prejudice at trial, and obtain exclusion of testimony or other evidence, where he or she knew, or should have known, of that testimony or evidence through due diligence in trial preparation. See Klose v. Coastal Emergency Servs. of Ft. Lauderdale, Inc., 673 So.2d 81 (Fla. 4th DCA 1996) (holding that although a party had listed an expert witness to provide testimony on one subject area, it was error to exclude the witness' testimony on another subject area where the opposing party was on notice at deposition that other areas might be addressed at trial); Melrose Nursery, Inc. v. Hunt, 443 So.2d 441 (Fla. 3d DCA 1984) (error to exclude an expert witness who had not been listed where opposing counsel had possession of the witness' report several months prior to trial); Ganey v. Goodings Million Dollar Midway, Inc., 360 So.2d 62 (Fla. 1st DCA 1978) (where pretrial discovery didn't disclose a doctor's opinion as to permanency of the plaintiff's injury, it was error to grant a new trial based on a claim of surprise by the doctor's testimony at trial that the plaintiff's injury was permanent, where the defense never asked the question of the doctor during discovery).
While I agree that the goals of the Rules of Civil Procedure are "to eliminate surprise, to encourage settlement, and to assist in arriving at the truth," Binger, 401 So.2d at 1313, and that "relevant facts should be the determining factor rather than gamesmanship, surprise, or superior trial tactics," id. (quoting Dodson v. Persell, 390 So.2d 704, 707 (Fla.1980)), I am unwilling to take the next step and require one side in litigation to prepare his or her opponent's case. Neither Binger nor Office Depot requires it. Since the plaintiff was on notice of Dr. Mack's opinions, and since the doctor's trial testimony did not contain "a substantial reversal of opinion," I believe that the trial court abused its discretion in granting a mistrial.
For the foregoing reasons, I would reverse the order of the trial court and remand for the entry of a final judgment consistent with the jury's verdict.
I note that the plaintiff did not create a record that would permit me to find that the appellants intentionally engaged in ambush tactics. Although at trial Dr. Mack testified that he reviewed the results of the plaintiff's psychological evaluation just prior to testifying, the plaintiff did not introduce evidence to establish what the content of the evaluation was; what opinions, if any, that information created or changed; nor why the materials were provided to Dr. Mack on the day of, or immediately prior to trial.[7] Had there been evidence of those factors in the record, my opinion might well have been very different.
Despite my opinion that the trial court's order should be reversed, I am very concerned that materials were provided to Dr. Mack for review on the day of trial. Any time attorneys engage in that behavior, *377 they open themselves to claims of surprise and ambush. Most civil cases take years to progress to trial. There should rarely be last minute examinations, document reviews or opinion formation by experts. In the truly rare case, if counsel must make a late submission to an expert witness, they should immediately disclose that fact to opposing counsel, along with the contents of the material, and disclose how, if at all, that material has affected the opinions of the witness. That type of disclosure to opposing counsel at the earliest opportunity would permit counsel to evaluate any change in testimony, and prepare for it, if possible. That disclosure will not guarantee that an expert's changed opinion will be admissible. The opposing party may still be prejudiced as a result of late disclosure, for example, by an inability to obtain testimony or evidence to rebut the new testimony, see J.B., Grau, by requiring the opposing party to engage in "frantic discovery," see Grau, or by a variety of other potential forms of prejudice that will vary on a case-by-case basis. It is also important for counsel to bear in mind that where the notification occurs after the start of the trial, this court has stated "we strongly feel that once the trial starts the parties' attorneys should be allowed to concentrate on the presentation of the evidence at hand." Grau, 626 So.2d at 1061. "[L]awyers have a right to expect that once a trial commences, discovery and examinations must cease. The lawyers who make the opening statement must have a reasonably firm idea of what the evidence will show. ... Once the trial starts the lawyers are engaged in the unfolding of the evidence they have already collected." Id.
NOTES
[1] The plaintiff raised a fourth subject area for the first time in her reply brief to this court. In it she claimed she was surprised and prejudiced by Dr. Mack's testimony concerning whether psychological factors played a role in her complaints of pain. First, this issue cannot form a basis to uphold the trial court's order. See K-Mart Corp. v. Hayes, 707 So.2d 957 (Fla. 3d DCA), review denied 718 So.2d 168 (Fla.1998) (a new trial cannot be granted on a ground that was not preserved by timely objection during trial). Second, even if properly preserved, there was no surprise or prejudice. The subject was discussed extensively in the doctor's reports, and counsel actually questioned the doctor about it at deposition.
[2] A neurologist who examined the plaintiff after the collision.
[3] This is particularly perplexing since prior to the deposition, counsel was in possession of Dr. Mack's reports in which he noted the need for an MRI to confirm his opinion.
[4] The same question could have been posed to trial counsel concerning the other opinions at issue.
[5] I disagree with the majority's contention that a trial attorney can or should rely entirely on a report produced under Florida Rule of Civil Procedure 1.360(b)(1) for his or her trial preparation. I find nothing in the wording of the civil discovery rules to require such a report to provide an attorney with the same type of detail that can be obtained from a properly conducted deposition or properly structured interrogatories.
[6] Although the doctor testified at trial that he based his opinion of lack of permanency, in part, on records he was shown that very day, upon a review of the entire record, the late supplied records do not appear to have formed a substantial basis for his opinion, nor to have caused "a substantial reversal of opinion."
[7] Some of that evidence would have been appropriate to introduce before the jury for impeachment. Some of it may only have been admissible before the judge. See §§ 90.104(2); 90.105, Fla.Stat. (1997).