THOMAS, J.
 

 Appellant, Allstate Property & Casualty Insurance Company (Allstate), appeals the trial court’s order granting a motion for new trial, arguing that the trial court overlooked or misapplied the principles specified in
 
 Binger v. King Pest Control,
 
 401 So.2d 1310 (Fla.1981), and
 
 Suarez-Burgos v. Morhaim,
 
 745 So.2d 368 (Fla. 4th DCA 1999). We agree, and reverse.
 

 Facts
 

 On July 17, 2004, Appellee was involved in a car accident. She was eventually referred to a specialist for her alleged injuries, including an annular tear in the lumbar spine. In April 2006, Appellee filed a complaint seeking compensatory damages for pain and suffering, mental anguish, loss of capacity, inconvenience, aggravation of a pre-existing injury, and medical costs, all under the uninsured/un-derinsured motorist coverage provision of her automobile insurance policy.
 

 A trial was held in March 2008, resulting in a jury verdict in favor of Allstate. Ap-pellee moved for a new trial based solely on the argument that the testimony of Allstate’s medical expert unfairly surprised and prejudiced Appellee and confused the jury.
 

 Dr. Von Thron, Allstate’s medical expert, examined Appellee and issued a report stating his medical opinion, diagnosis, and recommendation as part of a compulsory medical examination pursuant to rule 1.360, Florida Rules of Civil Procedure. Dr. Von Thron’s report stated that Appel-lee had no evidence of impairment, there was no evidence to substantiate her complaints, and her medical records were inconsistent because some indicated she began experiencing pain the day after the accident, while others indicated she did not have pain immediately after the accident. Dr. Von Thron issued supplemental reports after reviewing magnetic resonance images (MRIs) of Appellee’s lumbar spine, but he did not diagnose an annular tear.
 

 Before trial, Appellee filed a motion in limine seeking to limit Dr. Von Thron’s testimony to his reported opinions. Although the trial court did not explicitly rule on the motion, it is apparent from the discussion before and during trial that the trial court and the parties understood the
 
 *1233
 
 motion had been granted. Citing
 
 Suarez-Burgos,
 
 the trial court stated on the record that Dr. Yon Thron should not be allowed to offer opinions outside those contained in his report.
 

 On direct examination, Dr. Von Thron testified that he routinely reads MRIs and reaches his own conclusions as to the diagnosis, but he would defer to a radiologist’s differing opinion; however, he opined there was no evidence in Appellee’s MRIs indicating she had an annular tear. On cross-examination, Appellee’s counsel asked Dr. Von Thron whether annular tears have a poor capacity for healing; Dr. Von Thron agreed, and testified that it was possible Appellee had an annular tear with no objectively identifiable symptoms. When asked if he was changing his opinion by deferring to a radiologist, Dr. Von Thron replied he was not. When shown Appellee’s MRIs, Dr. Von Thron again stated he did not see an annular tear; however, he also testified that it was possible he missed such a tear. Finally, Dr. Von Thron agreed that an automobile accident, such as Appellee’s, could cause an annular tear in the lumbar spine. On redirect examination, Dr. Von Thron testified that any back strain, including lifting, yard work and housework, can cause an annular tear. He reaffirmed his opinion that if Appellee had an annular tear, she would have reported an immediate onset of pain following the accident.
 

 In the order granting a new trial, the trial court found Dr. Von Thron’s testimony violated the order in limine because he testified as to matters beyond the scope of his report. The trial court also found that Dr. Von Thron’s testimony improperly introduced the idea that if Appellee had an annular tear, it could have predated the accident and have been caused by housework or yard work. The trial court determined that Dr. Von Thron’s testimony deprived Appellee of a fair trial.
 

 Analysis
 

 Trial courts ordinarily enjoy broad discretion when addressing motions for new trial; however, the closer the issue comes to being purely legal in nature, the less discretion a trial court has.
 
 See Office Depot, Inc. v. Miller,
 
 584 So.2d 587, 589-91 (Fla. 4th DCA 1991).
 

 In
 
 Binger,
 
 the Florida Supreme Court announced the test that trial courts should apply in determining whether undisclosed testimony should be excluded as prejudicial to the opposing party:
 

 [A] trial court can properly exclude the testimony of a witness whose name has not been disclosed in accordance with a pretrial order. The discretion to do so must not be exercised blindly, however, and should be guided largely by a determination as to whether the use of the undisclosed witness will prejudice the objecting party. Prejudice in this sense refers to the surprise in fact of the objecting party, and it is not dependent on the adverse nature of the testimony. Other factors which may enter into the trial court’s exercise of discretion are: (i) the objecting party’s ability to cure the prejudice or, similarly, his independent knowledge of the existence of the witness; (ii) the calling party’s possible intentional, or bad faith, noncompliance with the pretrial order; and (iii) the possible disruption of the orderly and efficient trial of the case.... If after considering these factors, and any others that are relevant, the trial court concludes that the use of the undisclosed witness will not substantially endanger the fairness of the proceeding, the pretrial order mandating disclosure should be modified and the witness should be allowed to testify.
 

 
 *1234
 
 401 So.2d at 1313-14 (footnotes omitted). The
 
 Binger
 
 analysis should be applied where a medical expert changes his or her opinion, resulting in surprise and prejudice to the opposing party and necessitating a new trial.
 
 See Perryman, M.D., v. Crawford,
 
 968 So.2d 83 (Fla. 4th DCA 2007);
 
 Belmont v. N. Broward Hosp. Dist.,
 
 727 So.2d 992 (Fla. 4th DCA 1999);
 
 Suarez-Burgos,
 
 745 So.2d at 371;
 
 Office Depot,
 
 584 So.2d 587.
 

 The supreme court’s opinion in
 
 Binger
 
 is clear that testimony should be excluded only after the trial court determines it is prejudicial to the opposing party. A review of the record here indicates that the trial court did not consider the factors set out in
 
 Binger,
 
 which should have been a part of its exercise of discretion.
 
 Cf. Lugo v. Fla. E. Coast Ry. Co.,
 
 487 So.2d 321, 324 (Fla. 3d DCA 1986) (applying the
 
 Binger
 
 factors after determining the trial court failed to do so). Nevertheless, the record indicates that Appellee was not prejudiced by Dr. Von Thron’s testimony; Allstate did comply with the trial court’s order in limine; and Dr. Von Thron’s testimony did not disrupt or delay the proceedings.
 

 We note that Appellee extensively cross-examined Dr. Von Thron, and that his prejudicial testimony was first elicited on cross-examination when Appellee asked Dr. Von Thron whether an annular tear could be caused by an automobile accident. The cross-examination was followed by redirect examination, during which Dr. Von Thron discussed other causes of annular tears. In addition, Dr. Von Thron examined Appellee and reviewed her MRI films approximately one year before trial, yet the motion in limine was not filed until the morning of trial. Although Appellee was entitled to rely upon Dr. Von Thron’s report pursuant to Florida Rule of Civil Procedure 1.360(b), Appellee had ample time to depose Dr. Von Thron if she suspected a substantial change in his opinion. Regardless, any prejudice to Appellee was cured by the trial court’s order limiting Dr. Von Thron’s testimony to the ultimate conclusions stated within his report.
 

 Besides the trial court’s failure to consider the factors set out in
 
 Binger
 
 in determining whether Dr. Von Thron’s testimony should have been excluded, the trial court also misapplied the Fourth District’s holding in
 
 Suarez-Burgos.
 
 Contrary to the trial court’s oral ruling,
 
 Suarez-Burgos
 
 does not limit medical experts to the exact wording of their reports. The
 
 Suarez-Burgos
 
 court explained:
 

 There is no requirement or need for the opposing party to take the deposition of every expert where the party has been provided a report pursuant to the mandatory requirements of Rule 1.360(b). Nor is it necessary to exhaustively question the expert to discover whether the expert has come to other significant opinions not expressed in the report. Indeed, such requirements would fuel the ever increasing cost of litigation. Thus, a litigant who receives a report should be confident the report lists all of the major conclusions of the examining expert.
 

 745 So.2d at 371. Appellee was therefore justified in relying upon the ultimate, major conclusions Dr. Von Thron reached in his report. Limiting an expert’s testimony to the exact wording of his or her written report, however, would create an absurd result. Such reports often contain complex medical terminology, which requires extensive explanation.
 

 Nevertheless, the situation in this case is factually distinguishable from the cases relied upon by the trial court and Appellee. This is not a situation where a medical expert changed his opinion either immediately before or during trial, or where the parties failed to disclose an expert’s opin
 
 *1235
 
 ion.
 
 See Perryman, M.D.,
 
 968 So.2d at 85;
 
 Belmont,
 
 727 So.2d at 994;
 
 Suarez-Burgos,
 
 745 So.2d at 370;
 
 Office Depot,
 
 584 So.2d at 588. Florida Rule of Civil Procedure 1.360(b) requires only the disclosure of a “substantial reversal of opinion” after a doctor has submitted a report.
 
 Office Depot,
 
 584 So.2d at 590-91 (emphasis added). There was no substantial change between Dr. Von Thron’s opinion contained in his report and his trial testimony.
 

 After considering the record in light of the analysis in
 
 Binger,
 
 and our detei*mination that the trial court misapplied the holding in
 
 Suarez-Burgos,
 
 we conclude that the trial court’s order granting a new trial was an abuse of discretion.
 

 Attorneys’ Fees
 

 Below, Appellant made an offer of judgment to Appellee pursuant to section 768.79, Florida Statutes. After Appellant prevailed in obtaining a defense verdict, Appellant served its motion to tax costs and award fees based on the offer of judgment. Because the trial court granted Appellee’s motion for new trial, it denied as moot Appellant’s motion to tax costs and award fees.
 

 Appellant now moves for an award of appellate fees based on its offer of judgment below and on
 
 Frosti v. Creel,
 
 979 So.2d 912, 916 (Fla.2008). Because the trial court did not rule on the merits of Appellant’s motion for fees below, we remand with directions to the trial court to rule on the motion. The determination of whether Appellant is entitled to fees under section 768.79, Florida Statutes, is a question of law.
 
 See BDO Seidman, LLP v. British Car Auctions, Inc.,
 
 802 So.2d 366, 368 (Fla. 4th DCA 2001) (stating that neither party was prejudiced by opponent’s change in position regarding application of Offer of Judgment statute “which involved only a question of law”);
 
 see also Abram v. Dep’t of Health,
 
 13 So.3d 85 (Fla. 4th DCA 2009) (“ ‘[t]he courts of this state have consistently held that judicial interpretation of statutes ... are pure questions of law subject to the de novo standard of review.’ ”) (quoting
 
 State v. Sigler,
 
 967 So.2d 835, 841 (Fla.2007)). We further note the compelling policy foundation of section 768.79, as Judge Gross noted in his concurring opinion in
 
 British Car Auctions:
 

 The purpose of Section 768.79 is to lead “litigants to settle by penalizing those who decline offers that satisfy the statutory requirements.” Encouraging settlement lowers litigation costs for the parties and reduces the fiscal impact of litigation on the court system.... Early settlement of a case frees court time for the many other cases waiting to be heard.
 

 802 So.2d at 371-72 (citations omitted).
 

 Contrary to Appellee’s assertion below and on appeal, Appellant’s offer of judgment was not so vague that it could be construed as requiring Appellee to relinquish her right to bring suit for future causes of action unrelated to the subject matter of the instant case. In
 
 Ambeca, Inc. v. Marina Cove Village Townhome Ass’n, Inc.,
 
 this court held that a defendant’s offer of judgment that proposed to settle all claims asserted in the plaintiff’s cause of action against defendant, as well as “any other claims which [plaintiff] might otherwise have or assert against [defendant], including punitive damages,” was
 
 not
 
 so vague that it could be construed as improperly requiring plaintiff to relinquish its right to bring future, unrelated causes of action against defendant. 880 So.2d 811 (Fla. 1st DCA 2004).
 

 Here, Appellant’s offer of judgment provided: “[Appellant], hereby allows judgment to be taken against [it] ... in settlement of all claims by [Appellee] ... which
 
 *1236
 
 are the subject matter of the above captioned lawsuit.” As in
 
 Ambeca,
 
 nothing in this language suggests that Appellant’s offer of judgment was conditioned on Appel-lee forfeiting her right to sue Appellant for causes of action unrelated to the instant case. In fact, the express terms of the offer of judgment limit its scope to those claims that arise from the same subject matter as the instant case.
 

 Conclusion
 

 We therefore REVERSE the trial court’s order granting a new trial and REMAND for reinstatement of the jury’s verdict and consideration of Appellant’s motion for lower court attorneys’ fees pursuant to section 768.79, Florida Statutes. Further, we provisionally GRANT Appellant’s motion for appellate attorneys’ fees pursuant to its offer of judgment, with directions to the tidal court to determine the amount of appellate fees.
 

 HAWKES, C.J., and LEWIS, J., concur.