727 So.2d 992 (1999)
Fritzbert BELMONT and Adner Joseph, as Personal Representatives of the Estate of Venante Joseph, Deceased, for and on behalf of said Estate and the survivors thereof, Appellants/Cross-Appellees,
v.
NORTH BROWARD HOSPITAL DISTRICT, d/b/a Broward General Medical Center, etc., et al., Appellees/Cross-Appellants.
No. 96-3600.
District Court of Appeal of Florida, Fourth District.
January 27, 1999.
Rehearing Denied March 29, 1999.
*993 Sheldon J. Schlesinger of Sheldon J. Schlesinger, P.A., and Nancy Little Hoffmann of Nancy Little Hoffmann, P.A., Fort Lauderdale, for appellants/cross-appellees.
David F. Cooney of Cooney, Mattson, Lance, Blackburn, Richards & O'Connor, P.A., Fort Lauderdale, for Appellee/Cross-Appellants North Broward Hospital district d/b/a Broward General Medical Center, Coastal Emergency services of Broward County, Inc., Sunlife Ob-Gyn Services of Broward Co., Inc., Neil M. Levine, D.O., Michael Radeos, M.D., and Stephen A. Colucciello, M.D.
Joshua D. Lerner of Rumberger, Kirk & Caldwell, Miami, for Appellees/Cross-Appellants Bruce Jones, M.D. and Bruce Jones, M.D., P.A.
Philip D. Parrish of Stephens, Lynn, Klein & McNicholas, P.A., Miami, for Appellees-Dr. James Webb Cole, III and James Webb Cole, III, M.D., P.A.
KLEIN, J.
Plaintiffs appeal a defense verdict in a medical malpractice case. We reverse for a new trial, because the trial court erred in allowing two of the defendant physicians to testify at trial that the decedent's aorta had not been punctured, when their prior testimony, relied on by plaintiffs' in their case-in-chief, had been that the aorta had been punctured.
Plaintiffs' decedent, who apparently had fasted for two weeks, was admitted to the hospital as a voluntary Baker Act patient. The admitting emergency room physician did not consider her situation life-threatening, and, after giving her a battery of tests, called in a psychiatrist. The next day the patient went into cardiac arrest, which precipitated certain unsuccessful surgical procedures prior to her death. Plaintiffs alleged that she received negligent treatment by the hospital and several physicians.
Plaintiffs presented two theories of malpractice: (1) failing to diagnose decedent's starvation and dehydration when she arrived at the hospital; and (2) perforating her aorta while performing a diagnostic peritoneal lavage (DPL), which is a procedure to detect internal bleeding.
Dr. Colucciello, the emergency room physician, performed the DPL after decedent stopped breathing and the hospital went into a "code blue" procedure. DPL involves inserting a needle into the abdomen in order to determine whether there is internal bleeding. The DPL indicated internal bleeding resulting in Dr. O'Rourke, the on-call surgeon, performing an exploratory laparotomy (incision into the loin) to determine the exact source of the bleeding. During that procedure, Dr. O'Rourke cross-clamped decedent's aorta in order to raise her blood temperature. These procedures were unsuccessful and the decedent could not be revived.
Dr. Ongley, the assistant medical examiner, performed an autopsy and found perforations in the aorta, some of which had been stitched. He also found perforations which had been sutured in the mesentery (part of the sac which lines the exterior of the abdominal cavity). He gave the cause of death as cardiac arrest due to psychosis with a contributing cause being hemorrhage due to the DPL procedure.
The surgeon, Dr. O'Rourke, five months later, prepared a "death summary," in accordance with hospital policy, stating:
The patient is a 38-year-old lady who presented to the emergency room with psychiatric disorder, psychotic reaction. The patient developed shock, had abdominal tap. Patient was taken to the operating room where the patient was found to have no significant intra-abdominal pathology apart from hemoperitoneum from needle stick to the aorta. Patient remained in shock throughout the procedure despite no evidence of any major intra-abdominal injury. The patient subsequently developed DIC in the operating room and patient arrested on the table from which she could not be resuscitated. [emphasis added.]
Dr. O'Rourke was called to testify during plaintiffs' case-in-chief, and he testified that when he operated shortly after the DPL was performed, he found that the aorta had been perforated and that there was a needle stick in the mesentery that was in *994 direct line with the needle stick in the aorta. Dr. O'Rourke further testified that he sewed up both perforations. Consistent with his death summary, at trial during the plaintiffs' case, Dr. O'Rourke stated that these perforations resulted from the DPL procedure.
In his pretrial deposition, Dr. Colucciello testified that he had reviewed the autopsy report, recalled that the medical examiner found a perforation to the aorta, and acknowledged that the perforation could have occurred during the DPL which he had performed. Dr. Colucciello's deposition testimony was read to the jury as part of the plaintiffs' case.
When Dr. Colucciello and Dr. O'Rourke, who were both defendants, testified during the defendant's case, they changed their testimony 180 degrees and rendered opinions that the aorta had never been perforated. They did so, because, during trial, defense counsel, David Cooney, had them examine the decedent's aorta which had been preserved at the medical examiner's office. They decided, after these mid-trial examinations of the aorta, that it did not contain any punctures. The defendant doctors reconciled their previous testimony by stating that the former had not been based on an actual examination of the aorta, but rather in reliance on the report of the medical examiner. Plaintiffs argue that their objections to this surprise testimony should have been sustained, and that we should reverse and remand for a new trial.
In Grau v. Branham, 626 So.2d 1059 (Fla. 4th DCA 1993), plaintiffs counsel had two expert witness physicians examine the plaintiff after the trial had commenced, and the experts then gave opinions which were contrary to their deposition testimony. In reversing for a new trial, we observed:
Clearly, except under extraordinary circumstances which do not exist here, the lawyers have a right to expect that once a trial commences, discovery and examinations must cease. The lawyers who make the opening statement must have a reasonably firm idea of what the evidence will show. Liberal rules of discovery assure this.... All the discovery rules and the extensive efforts of the parties to discover the other party's case would be for naught if one side were able to wait until trial started to establish key pieces of evidence such as what occurred in this case.
Id. at 1061.
We had previously stated in Office Depot, Inc. v. Miller, 584 So.2d 587, 590 (Fla. 4th DCA 1991): "A party can hardly prepare for an opinion that it doesn't know about, much less one that is a complete reversal of the opinion it has been provided."
We are not impressed with defendant's argument that Drs. Colucciello and O'Rourke were parties, not expert witnesses, and that this was factual, not opinion, testimony. The issue of the condition of the aorta was clearly opinion evidence. Nor can we agree with some of the other defendants that this change in testimony does not require a new trial as to all defendants. This error could have influenced the jury as to the negligence of all of the defendants.
Our reversal does not preclude the admission of the changed opinions of Drs. Colucciello and O'Rourke on retrial. The court should not have allowed them at this trial because of the surprise and prejudicial nature of their testimony. If the defendants do seek to present this evidence on retrial, plaintiffs must be given an opportunity to fully examine any witnesses so testifying by deposition and to call additional experts on this issue.
The defendants have cross-appealed the trial court's refusal to give them access to the decedent's diary and psychiatric records during discovery. Decedent's diary is not privileged, and regardless of its ultimate admissibility, it may have led to the discovery of evidence relevant to her physical condition which caused her to admit herself to the hospital. As to the psychiatric records, there is a psychotherapist-patient privilege under section 90.503, Florida Statutes (1997), but there is no privilege "after the patient's death, in any proceeding in which any party relies upon the condition as an element of his claim or defense." § 90.503(4)(c). Considering the circumstances under which the decedent was admitted to the hospital, we find no privilege here. *995 On remand defendants will accordingly be entitled to have access to defendant's diary and her psychiatric records.
We have considered the remaining issues and find them to be without merit. Reversed.
WARNER and TAYLOR, JJ., concur.