# SIXTH DISTRICT COURT OF APPEAL
# STATE OF FLORIDA

_____

Case No. 6D2023-1940
Lower Tribunal No. 2018-CA-000160-O

_____

WAL-MART STORES EAST, L.P.,

Appellant,

v.

DOROTHY WYNN,

Appellee.

_____

Appeal from the Circuit Court for Orange County.
A. James Craner, Judge.

March 20, 2026

MIZE, J.

Appellant Wal-Mart Stores East, L.P. ("Wal-Mart") appeals the final judgment entered below following a jury trial. Wal-Mart asserts that the trial court erred by excluding an opinion of Wal-Mart's expert witness. We find no error in the trial court's ruling and, therefore, affirm the final judgment. In doing so, we certify this decision to be in conflict with *Callari v. Winkeljohn*, 329 So. 3d 795 (Fla. 3d DCA 2021), and *Dos Santos v. Carlson*, 806 So. 2d 539 (Fla. 3d DCA 2002), for the

same reasons set forth in the court's recent opinion in *Crecelius v. Rizzitano*, No. 6D2024-2217, 2026 WL 555031, at *1 (Fla. 6th DCA Feb. 27, 2026).

**Background and Procedural History**

In August 2015, the Plaintiff, Dorothy Wynn ("Wynn"), was walking in a Wal-Mart parking lot and tripped on a crack in the pavement, which she alleges resulted in a sprained ankle and nerve damage, including specifically to the peroneal nerve in her ankle. In January 2018, Wynn sued Wal-Mart for negligence. Both below and on appeal, Wal-Mart did not dispute that Wynn fell and suffered a sprained ankle, but Wal-Mart disputed that the injury caused Wynn any nerve damage.

The trial court below entered a case management order which: (1) set the trial for a trial period beginning April 25, 2022; (2) set a pretrial conference for April 12, 2022; (3) set a discovery cut-off date of April 11, 2022; (4) required disclosure of all witnesses, exhibits and depositions to be used at trial no later than sixty days before the pretrial conference; and (5) required the parties' attorneys to meet at least fifteen days before the pretrial conference to, among other things, exchange trial exhibits and agree on which exhibits could be admitted without objection. As to expert witnesses, the case management order required Wynn to disclose her expert witnesses no later than 120 days before the pretrial conference. The order required Wal-Mart to disclose its expert witnesses within fifteen days of receiving Wynn's

2

expert witness disclosure. The case management order stated that to "disclose" an expert witness meant to provide, among other things, "a statement of the specific subjects upon which the expert will testify and offer opinions." The order further required that "[a]ny changes in an expert's opinion or changes in the basis of the expert's opinion must be disclosed to all parties no less than sixty (60) days prior to the Pre-Trial Conference."

The trial court subsequently entered an order continuing the trial which: (1) set the trial for a trial period beginning October 10, 2022; (2) set the pretrial conference for September 27, 2022; (3) set a discovery cut-off date of September 26, 2022; (4) required the pretrial meeting of attorneys to occur at least fifteen days before the new pretrial conference date; and (5) required the parties to serve any amended witness lists, exhibit lists or deposition designations at least fifteen days before the meeting of the attorneys. Since the case management order required the parties to disclose any changes in an expert's opinion at least sixty days before the pretrial conference, the order continuing the trial had the effect of setting July 29, 2022 as the parties' deadline to disclose any changes in expert opinions.

Pursuing its defense of Wynn's claims, Wal-Mart retained Dr. Thomas Odmark, a board-certified orthopedic surgeon who gave his first deposition in March 2022. In his deposition, Dr. Odmark opined that Wynn's nerve damage was not caused by her fall in the Wal-Mart parking lot. Additionally, Dr. Odmark discussed

3

the possibility and "wondered" whether her nerve damage was related to a preexisting back condition from which Wynn had suffered since at least 2001. Ultimately, Dr. Odmark testified in the deposition that he was not of the opinion that the preexisting back condition was the cause of the nerve damage at issue in the lawsuit.

On September 26, 2022, the day of the discovery cut-off, Wynn produced new medical records reflecting ongoing complaints of her injury and treatment she received from March 17, 2022 through August 29, 2022.[1] On October 7, 2022, just days before the start of the trial period on October 10, 2022, Wynn's counsel conducted a second deposition of Dr. Odmark. The parties agreed that this deposition was for the purpose of taking testimony to be presented at trial because Dr. Odmark would not appear in person at the trial. As he did in his first deposition, Dr. Odmark did not contest that Wynn was injured from her fall in the Wal-Mart parking lot. However, unlike in his first deposition, Dr. Odmark testified in his second deposition that based on his review of the additional medical records produced by Wynn, Wynn's nerve injury could in fact be related to her preexisting back condition. Wynn's counsel did not object to this testimony during the deposition.

---

[1] Wal-Mart requested these records on June 24, 2022. Wynn failed to timely provide them, causing Wal-Mart to file a motion to compel. Wynn finally produced the records on September 26, 2022.

At trial, Wynn's counsel objected to the introduction of Dr. Odmark's new opinion through deposition designations. Wal-Mart's counsel responded by arguing that: (1) "I don't know if [Dr. Odmark] goes [so] far as to directly contradict his prior testimony"; (2) per *Binger v. King Pest Control*, 401 So. 2d 1310 (Fla. 1981), Wynn was not prejudiced by any new opinion on causation from Dr. Odmark because Wynn's own experts had already testified that Wynn's nerve damage was caused by her fall in the Wal-Mart parking lot; (3) the reason for any failure to timely disclose Dr. Odmark's new opinion (if it was new) was because Wynn produced new medical records on the last day of the discovery period; and (4) Wynn did not contemporaneously object to the new opinion during the deposition.

After hearing the parties' arguments, the trial judge proceeded to rule based on *Binger* as it had been incorrectly applied by our sister courts. *See Crecelius*, 2026 WL 555031, at *3-5. In short, the trial judge found that Dr. Odmark's opinion was a "very different opinion" than Dr. Odmark had given in his first deposition, that the new opinion was not disclosed by the deadline set forth in the case management order, that Wynn would be prejudiced by the introduction of the new opinion, and that there was no time to cure the prejudice. The trial court also found that permitting the introduction of the new opinion would cause "a substantial disruption to the orderly and efficient progress of the trial at this time." For these reasons, the trial judge excluded the new opinion.

5

At the conclusion of the trial, the jury found in favor of Wynn and awarded her $1,000,000.00 in damages, which was reduced to $900,825.81 in the judgment due to setoffs to which the parties stipulated. On appeal, Wal-Mart argues that the trial court abused its discretion by excluding Dr. Odmark's opinion that Wynn's nerve damage may have been caused by her preexisting back condition. Wal-Mart asserts that Wynn would not have been prejudiced by the new opinion because Wynn presented two of its own experts on causation who testified that Wynn's nerve damage was caused by her fall in the Wal-Mart parking lot. Wal-Mart argues that because Wynn was prepared to and, in fact, did address the opinion that Wal-Mart sought to introduce, she could not have been prejudiced by the introduction of the opinion.[2]

## Analysis

As this court recently explained in *Crecelius*, the holding of *Binger* is that where a party fails to disclose a witness by the deadline set forth in a pretrial order, the trial court must consider prejudice to the other party before exercising its discretion to allow the testimony. *Crecelius*, 2026 WL 555031, at \*4. The Florida

---

[2] Wal-Mart also argues that Dr. Odmark's causation opinion excluded by the trial court was in fact not a new opinion, that it was not inconsistent with Dr. Odmark's testimony in his discovery deposition, and therefore, that it was not an undisclosed opinion subject to potential exclusion for non-disclosure to begin with. As another ground for its appeal, Wal-Mart also separately argues that the judgment must be reversed because the trial court permitted Wynn's counsel to make improper closing arguments. We affirm as to both of these issues without discussion.

Supreme Court's statement in *Binger* about what a trial court should consider before excluding an undisclosed witness's testimony was dictum that is not binding on this court. *Id.* Additionally, while our sister courts expanded *Binger* from governing undisclosed witnesses to also governing changes in the testimony of disclosed witnesses, including new or changed opinions from an expert witness, this expansion was exactly that – an expansion of *Binger* that was not required by its holding. *Id.* at *3-4.

Contrary to our sister courts' decisions expanding *Binger* beyond its holding, where a party fails to disclose an opinion of its expert witness by the deadline set forth in the applicable case management order, the trial court is permitted to strictly enforce the case management order and exclude the undisclosed opinion, without considering whether the other party would be prejudiced by the introduction of the undisclosed opinion. *Id.* at *7-8. Accordingly, the trial court did not err by excluding the undisclosed expert opinion of Dr. Odmark.[3]

---

[3] Like the case management order at issue in *Crecelius*, the case management order entered by the trial court in this case was entered pursuant to the version of Florida Rule of Civil Procedure 1.200 that was in effect prior to January 1, 2025. *See Crecelius*, 2026 WL 555031, at *8; Fla. R. Civ. P. 1.200 (2024). As we did in *Crecelius*, we note that the new version of Rule 1.200 that became effect on January 1, 2025, states that "deadlines in a case management order must be *strictly enforced* unless changed by court order." *Crecelius*, 2026 WL 555031, at *8 (quoting Fla. R. Civ. P. 1.200(e)(1) (2025) (internal alteration omitted, emphasis in original)). Additionally, an amendment to Florida Rule of Civil Procedure 1.380 that also took effect on January 1, 2025, provides that "if a party fails to provide information or identify a witness as required by rule 1.280(a) or (g), the party is not allowed to use

We acknowledge Wal-Mart's argument that Wynn produced new medical records after the parties' deadline to disclose changes in their experts' opinions. However, despite being aware of the deadline, Wal-Mart did not file a motion in the trial court to extend the deadline. Had Wal-Mart filed a motion to extend its deadline to disclose changes in its experts' opinions on the ground that Wynn made a late production of new medical records, the trial court could have considered that issue and extended the deadline or taken other appropriate action. *See Crecelius*, 2026 WL 555031, at *9 n.8. Wal-Mart filed no motion to extend the expert disclosure deadline, and no ruling from the trial court on any such motion is at issue in this appeal. All that is before this court is Wal-Mart failing to disclose an expert opinion by the required deadline and a trial court enforcing its case management order and excluding the undisclosed opinion, which the trial court was permitted to do.

We also acknowledge Wal-Mart's argument that Wynn did not contemporaneously object to the new opinion during the deposition. However, Wynn had no such obligation. Florida Rule of Civil Procedure 1.330(b) states that when a deposition is used at trial, "objection may be made at the trial . . . to receiving in evidence any deposition or part of it for any reason that would require the exclusion of the evidence if the witness were then present and testifying," subject to

that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." *Crecelius*, 2026 WL 555031, at *8 (quoting Fla. R. Civ. P. 1.380(d) (2025) (internal alteration omitted)).

8

the provisions of Rule 1.330(d)(3) providing that certain objections, none of which are at issue here, may be waived if not made at the deposition. Wal-Mart argues, and Wynn did not dispute, that the parties stipulated below that Dr. Odmark's second deposition was for the purpose of taking testimony to be presented at trial because Dr. Odmark would not appear in person at the trial. On that basis, Wal-Mart argues that Wynn was required to make during the deposition any objections that she would otherwise have been required to make only at the trial. However, nothing in the record of this appeal contains the terms of the parties' agreement or establishes that the parties stipulated that the deposition would not be governed by the rules of procedure that normally govern depositions.[4] Since Wynn was permitted to object for the first time at trial to any part of the deposition for any reason that would require the exclusion of the testimony if Dr. Odmark were present and testifying, Wynn's failure to object to the introduction of a new opinion at the deposition is of no moment.

## Conclusion

As we stated in *Crecelius*, where a party fails to meet a disclosure deadline set forth in a case management order, the trial court may strictly enforce the order and exclude the undisclosed evidence. *Crecelius*, 2026 WL 555031, at *9. Because

---

[4] We express no view as to whether any such stipulation, if made, would be enforceable.

9

Wal-Mart attempted to offer in evidence an expert opinion that had not been disclosed by the deadline set forth in the trial court's case management order, the trial court did not err by enforcing its order and excluding the undisclosed opinion. Accordingly, we affirm the final judgment. In doing so, pursuant to Article V, Section 3(b)(4) of the Florida Constitution, for the same reasons articulated in *Crecelius*, we certify this decision to be in direct conflict with *Callari v. Winkeljohn*, 329 So. 3d 795 (Fla. 3d DCA 2021), and *Dos Santos v. Carlson*, 806 So. 2d 539 (Fla. 3d DCA 2002), both of which held that *Binger* requires a trial court to find that the opposing party would be prejudiced by the introduction of a late-disclosed or undisclosed expert opinion before excluding the expert witness's opinion.[5]

AFFIRMED. CONFLICT CERTIFIED.

WOZNIAK, J., concurs.[6]
SMITH, J., concurs in result only, with opinion.

---

[5] *Crecelius* concerned both the failure to timely disclose the names of expert witnesses and the failure to timely disclose those experts' opinions. *Crecelius* certified conflict with sixteen decisions of our sister courts which held that *Binger v. King Pest Control*, 401 So. 2d 1310 (Fla. 1981), requires a trial court to find that the opposing party would be prejudiced by the introduction of testimony of an undisclosed or late-disclosed witness, or by the introduction of a late-disclosed expert opinion, before excluding the witness's testimony. This case concerns only the failure to timely disclose an opinion of an expert witness whose name was timely disclosed. Therefore, this decision only certifies conflict with *Callari* and *Dos Santos*, which are the cases with which *Crecelius* certified conflict that concern the failure to timely disclose an opinion of an expert witness rather than the failure to timely disclose the name of a witness.

[6] Judge Wozniak has viewed the oral argument that was conducted in this case.

10

_____

NOT FINAL UNTIL TIME EXPIRES TO FILE MOTION FOR REHEARING
AND DISPOSITION THEREOF IF TIMELY FILED
_____

SMITH, J., concurring in result only, with opinion.

I agree with the majority that under *Crecelius v. Rizzitano*, No. 6D2024-2217, 2026 WL 555031 (Fla. 6th DCA Feb. 27, 2026), this is an affirmance. However, if the Florida Supreme Court disagrees with *Crecelius*, then *Binger v. King Pest Control*, 401 So. 2d 1310 (Fla. 1981), would apply. As discussed more fully below, under *Binger*, this case warrants reversal.

## I.      Background

Dorothy Wynn claimed she suffered a sprained ankle and ankle-related nerve damage when she tripped and fell on a crack in the pavement in Wal-Mart's parking lot. Wal-Mart did not deny that Wynn fell and injured her ankle, but it disputed Wynn's claim that the fall caused her to suffer nerve damage.

To support its position, Wal-Mart retained Dr. Thomas E. Odmark, a board-certified orthopedic surgeon. Wynn deposed Dr. Odmark in March 2022, during which he expressed puzzlement about not seeing any or much evidence of ankle-related neurological damage in Wynn's medical records in the months after the fall. This led Dr. Odmark to conclude that no nerve damage resulted from the fall.

11

It was undisputed that Wynn had a preexisting back injury from over a decade prior. When Dr. Odmark was asked in his March 2022 deposition about whether the back injury could be causing the ankle issues, he responded as follows:

> Q: But just to be clear, I guess you're not- and I think we might have covered this, but you're not saying that her preexisting back problem is the cause of her current nerve problem in her right ankle?
>
> A: No. No. The nerve problem in the ankle -- I mean, she has this back issue from before with positive straight leg raise bilaterally and pain bilaterally, but no radiculopathy on the right side in that 2001 report from what I recall. But I don't necessarily think that that created this nerve problem for her. If she had a long-term nerve problem there, I'd expect some other issue to be going on that she would have been treated for or had numbness or weakness or something like that. She didn't.

Thus, although Dr. Odmark overall denied that the ankle nerve issue was due to the fall, as of his March 2022 deposition, he discounted that any nerve problem in the ankle would be related to Wynn's preexisting back injury because her prior medical records would have revealed it.

The pretrial order contained an expert witness disclosure deadline of sixty days before the pretrial conference. The judge ultimately set the pretrial conference for September 27, 2022. The order expressly defined disclosure of an expert witness as, among other things, provision of "a statement of the specific subjects upon which the expert will testify and offer opinions." The parties were also required to disclose "[a]ny changes in an expert's opinion or changes in the basis of the expert's opinion" within the same timeframe.

12

On October 7, 2022, Wal-Mart deposed Dr. Odmark for the specific purpose of using the deposition at trial, which was set to commence on Monday, October 10. His testimony, for the most part, unremarkably tracked his prior deposition–namely, that the fall at Wal-Mart did not cause Wynn to suffer nerve damage to the ankle. However, this time, Dr. Odmark also opined that the nerve injury and nerve-related symptoms in the ankle *could* be related to Wynn's preexisting back injury. Counsel for Wynn picked up on this distinction and asked Dr. Odmark about his prior deposition testimony discussed above. Dr. Odmark responded that his position regarding Wynn's preexisting back condition was due to facts revealed in medical records that he only recently had received. The "recently received" records had been belatedly produced by Wynn on September 26, 2022, the last day of discovery per the court's pretrial order. Further, the records were produced in response to Wal-Mart's request for production that had been served on June 24, 2022, but only after Wal-Mart moved to compel Wynn's response. The treatment records spanned the period from March 2022 to August 2022. Counsel for Wynn did not assert at the October 7 deposition that she was in any way prejudiced by Dr. Odmark's adjusted opinion testimony, or that Dr. Odmark could have formed his modified opinion without the records received on September 26, 2022.

At trial, when Wal-Mart sought to admit into evidence portions of Dr. Odmark's second deposition, Wynn's counsel objected because the testimony was a

"new" or "changed" opinion. Wal-Mart made two responses: one, that the opinion relative to connecting the prior back injury to the present ankle nerve complaints was based on records only recently received by Wal-Mart; and two, that introduction of this revised opinion would not prejudice Wynn. As for potential prejudice, Wal-Mart noted that Wynn had just presented two experts who testified to the jury about this same issue. Wal-Mart also pointed out that Wynn had the opportunity to address this revised opinion before trial during Dr. Odmark's October 7 deposition. Other than the lateness of the disclosure, Wynn made no other argument about potential prejudice to Wynn in allowing the opinion. The trial court excluded the opinion testimony under *Binger v. King Pest Control*, 401 So. 2d 1310 (Fla. 1981), making the following ruling on the record:

> I think when you appl[y] *Binger*, and I have a copy of it in front of me, it talks about excluding the testimony of a witness here, and here it seems to be an opinion offered by Odmark, a doctor in this case as recently as Friday in a trial deposition, which is to be played for the jury, I guess. It's not to be -- my discretion is not to be exercised blindly, guided largely, however, by a determination as to whether the undisclosed witness, or I'll say in this case, the opinion of the witness will prejudice the objecting party. Prejudice refers to surprise [in] fact. It is not dependent upon the adverse nature of the testimony. There are other factors, of course, the Court may consider, including the objecting party's ability to cure or similarly his independent knowledge of the existence of the witness in the calling parties hostile intentional or bad faith noncompliance with the order, possible disruption of the orderly and efficient trial of the case. And, of course, other relevant factors. I think here it would be appropriate to sustain [Wynn's] objection. I do find it to be, one, a very different opinion under the circumstances based upon what I read here. The trial deposition versus the discovery deposition, I do find that it would create prejudice for the plaintiff under

14

the circumstances that results in surprise [i]n fact [] to them, there is no time at this time to cure it. There does not appear to be any evidence or independent evidence through this witness, I guess, or any other witness, I guess. But critically, this witness, I believe, the existence of this opinion, under the circumstances, I don't know that it rises to the level of noncompliance with a court order equaling bad faith. It does seem, however, though, if you read this deposition, if I'm reading accurately, I may or may not be, but certain records were provided to this deponent prior to this deposition, which may have caused this to occur. I'm not sure why those weren't provided prior to this, and the opinion made known, but it wasn't. I do find it would represent a substantial disruption to the orderly and efficient progress of the trial at this time. . . . Plaintiff's objection will be sustained as to that limited new opinion. That modification can be made for purposes of trial preparation and playing it for the jury under the circumstances.

At the end of the trial, the jury returned a verdict in favor of Wynn for $1,000,000, apportioning 100% fault for the accident to Wal-Mart.[7] Wal-Mart then filed the subject appeal.

## II.    Analysis

Under *Binger*, the trial court's exclusion of Dr. Odmark's revised opinion testimony would be reviewed under an abuse of discretion standard. *See Monzón v. R.J. Reynolds Tobacco Co.*, 388 So. 3d 930, 931 (Fla. 3d DCA 2024) ("[The] standard of review on a trial court's evidentiary rulings is abuse of discretion." (quotation omitted)); *see also Walerowicz v. Armand-Hosang*, 248 So. 3d 140, 146 (Fla. 4th DCA 2018) ("Admission or exclusion of the testimony of a witness in

---

[7] The verdict was eventually reduced to $900,825.81 based on agreed setoffs.

15

violation of a trial preparation order is within the trial court's discretion." (citing *Binger*, 401 So. 2d at 1313-14)).

A. *Application of* Binger *to the Present Case*

Along with prejudice to the opposing party, the three additional factors set forth in *Binger* when analyzing exclusion of testimonial evidence are:

> (i) the objecting party's ability to cure the prejudice or, similarly, his independent knowledge of the existence of the witness; (ii) the calling party's possible intentional, or bad faith, noncompliance with the pretrial order; and (iii) the possible disruption of the orderly and efficient trial of the case (or other cases).

401 So. 2d at 1314. While at first blush it appears that the trial court went through the factors outlined in *Binger*, upon closer inspection it does not appear that *any* of those factors are satisfied to justify the exclusion of Dr. Odmark's testimony. To be clear, Dr. Odmark never changed his opinion that any nerve damage claimed by Wynn was not related to her fall at Wal-Mart. Moreover, the belated nature of Wal-Mart's disclosure, that being Dr. Odmark's opinion that Wynn's claimed nerve damage may be related to her preexisting back injury, was not because of lack of diligence by the doctor, but was solely attributable to the late provision of records by Wynn. As to the factor of prejudice, the only prejudice outlined by the trial court and supported by the record would be the late disclosure of the revised opinion. As for Wynn's "ability to cure the prejudice," the record reveals that Wynn had not one,

16

but two experts available who testified that Wynn's prior back injury was *not* related to the present nerve-related complaints in her ankle.[8]

As to the next factor of possible "intentional, or bad faith, noncompliance with the pretrial order," the record reveals no such thing. Dr. Odmark's testimony at his second deposition occurred within eleven days of when Wal-Mart's received the supplemental records belatedly provided by Wynn. The trial court appears to have also conceded that there was no evidence of bad faith: "I don't know that it rises to the level of noncompliance with a court order equaling bad faith."

As to the factor of "possible disruption of the orderly and efficient trial of the case," the trial court did not reference any facts supporting such a finding (again, other than the late nature of the disclosure, which was not attributable to Wal-Mart). Given that Wynn was aware of the testimony before trial and had two experts testify earlier in the trial directly contrary to Dr. Odmark's proposed (and known) testimony, no "disruption" of the trial would have arisen from its admission.

In *Lugo v. Florida East Coast Railway Co.*, 487 So. 2d 321, 322 (Fla. 3d DCA 1986), the plaintiffs failed to disclose their expert within sixty days before trial as required by the pretrial order. Defendants were aware of the expert and in fact had

---

[8] On appeal, Wynn appears to concede that she had such experts ready and available to testify: "Wal-Mart talks in its Brief about the fact that Wynn had her own experts talk about her preexisting back condition, specifically that it was not the cause of her ankle pain. This is true[.]" Ans. Br. p. 26 (internal citations omitted).

17

deposed him. *Id.* at 323. The only basis for striking the expert was lack of compliance with the pretrial order. *Id.* In accordance with *Binger*, the Third District stated: "At the outset we agree with appellants that exclusion of the witness for failure to strictly comply with the pretrial order is indefensible." *Id.* Finding no prejudice in permitting the testimony, and that the other *Binger* factors favored the plaintiff, the court reversed and remanded for a new trial. *Id.* at 324-25.

As in *Lugo*, even if Dr. Odmark's change in opinion was untimely disclosed under the pretrial order, under *Binger*, his opinion should not have been excluded simply based on "strict compliance" with the pretrial order. Further, Wynn bore the burden of establishing some form of prejudice that would ensue from the testimony.

In *Myron v. South Broward Hospital District*, 703 So. 2d 527, 528 (Fla. 4th DCA 1997), the lower court excluded the testimony of the plaintiff's expert based on a perceived stipulation by the parties to not call him. The Fourth District Court of Appeal applied the *Binger* factors to determining whether permitting the testimony at trial would have prejudiced the remaining defendant:

> Applying these criteria to the instant case, we can easily see that there was no prejudice to the opposing party. *Memorial not only independently knew of the witness*, but also *knew the substance of his expected testimony. Its attorney was specifically put on notice that appellant intended to use his opinions at trial against Memorial.* At trial, *Memorial had listed its own experts whose testimony could have been used to combat Dr. Calcagno's opinions.* **There was no prejudice**.

*Id.* at 529 (emphasis added).

18

The *Myron* court found no prejudice from admission of the expert testimony based on three grounds: (1) that the opposing party knew of the witness; (2) that the opposing party knew of the expected testimony of the witness; and (3) that the opposing party had its own experts available who could have combatted the testimony. *Id.* Similarly, our instant case has all three. Wynn not only knew of Dr. Odmark, but was apprised before trial of his expected testimony based on the recently produced records. And Wynn had two experts available to testify, and who in fact testified, to the exact subject matter of causation that Wal-Mart sought to address with Dr. Odmark. As in *Myron*, Wynn was not prejudiced.

Wynn centrally relies on two cases in asserting exclusion was proper under *Binger*: *Gurin Gold, LLC v. Dixon*, 277 So. 3d 600 (Fla. 4th DCA 2019), and *Belmont v. North Broward Hospital District*, 727 So. 2d 992 (Fla. 4th DCA 1999). In *Gurin*, the plaintiff waited until the second day of trial to furnish to its expert MRI results that plaintiff's counsel had possessed for *years*. 277 So. 3d at 602. Based on the results, the expert offered significant causation testimony highly favorable to the plaintiff, and which had not been disclosed at any time before that point. *Id.* The trial court allowed the testimony over the defendants' objection. *Id.* The Fourth District Court of Appeal began with the premise that "presentation of a changed opinion is tantamount to permitting an undisclosed adverse witness to testify." *Id.* at 603 (quoting *Dep't of HRS v. J.B. By & Through Spivak*, 675 So. 2d 241, 244 (Fla.

19

4th DCA 1996)). In applying the *Binger* factors, the *Gurin* court determined that the lower court reversibly erred in admitting the undisclosed testimony based on the following: (1) the defendants had told the jury during their opening statement that plaintiff's expert would not be offering that particular causation opinion; (2) the defendants could not cross-examine the expert about this opinion before trial; (3) the defendants could not counter the plaintiff's expert testimony with testimony from their own experts; and (4) the record showed the non-compliance with the pretrial order was *intentional*. *Id.* at 603-04.

A side-by-side comparison of *Gurin* to our case reveals the two cases are not comparable. Here, Wynn had *not* relied on Dr. Odmark's original March deposition testimony in her opening. Wynn *was* able to cross-examine Dr. Odmark about the changed opinion by deposition before trial. Wynn *did* have experts available to combat Dr. Odmark's modified opinion. And perhaps most significantly, Dr. Odmark's modification, in part, of his opinion was *not intentional*, but was brought about because of new medical records being provided to him by the plaintiff only days before commencement of trial. *Gurin* offers no support to Wynn's position.

Wynn's reliance on *Belmont* is similarly unavailing. Much like *Gurin*, the defendants in *Belmont* gave their testifying physicians (who were also defendants in the action) an exhibit in the middle of trial that resulted in a 180-degree change in their testimony. 727 So. 2d at 994. During plaintiff's case-in-chief, those same

20

physicians testified that the decedent plaintiff's aorta had been punctured and then stitched together during performance of an emergency medical procedure. *Id.* at 993-94. After plaintiff's case-in-chief, while testifying for the defense, both doctors claimed that they no longer believed the aorta had been punctured or stitched. *Id.* at 994. This was based on defense counsel presenting the doctors with the actual aorta preserved by the medical examiner and having them examine the same in court. *Id.* The Fourth District Court of Appeal reversed and remanded due to the trial court's admission of the doctors' testimony despite the plaintiff's objection, reasoning:

> "All the discovery rules and the extensive efforts of the parties to discover the other party's case would be for naught if one side were able *to wait until trial started* to establish key pieces of evidence such as what occurred in this case.["] [*Grau v. Branham*, 626 So. 2d 1059, 1061 (Fla. 4th DCA 1993)]. We had previously stated in *Office Depot, Inc. v. Miller*, 584 So. 2d 587, 590 (Fla. 4th DCA 1991): "A party can hardly prepare for an opinion that it doesn't know about, much less one that is a complete reversal of the opinion it has been provided."

*Id.* (emphasis added).

The distinctions between *Belmont* and this case are plain. Dr. Odmark's change in opinion was not made midtrial. Nor did Wynn rely in any way on Dr. Odmark's position as expressed in his March 2022 deposition in her case-in-chief. This is hardly a situation of Dr. Odmark being presented with evidence midtrial to induce a change in his testimony. Rather, he was presented with new medical records by Wynn only two weeks before trial, and later testified from these

21

additional records at his deposition. Thus, *Belmont* is not supportive of Wynn's position.

Finally, Wynn argues that even if the trial court erred by excluding Dr. Odmark's testimony, it was at most harmless. Wynn contends that Wal-Mart was able to argue that the nerve-related complaints in Wynn's ankle were unrelated to the fall at Wal-Mart. While that is true, what Wal-Mart was prevented from arguing before the jury was any *alternate source* to Wynn's nerve-related issues in her ankle. It is one thing to say, "we didn't do it," but entirely another to say, "but this is what did." Preventing Wal-Mart from arguing an alternate cause to the ankle-related nerve complaints could not be deemed harmless under these facts.

## III.   Conclusion

In *Crecelius*, I expressed in my concurring opinion my disagreement with the majority's rejection of the *Binger* standard. 2025 WL 555031, at *18 (Smith, J. concurring in result only). While I will not reiterate the entirety of my position, I believe that under *Pedroza*'s[9] chosen decisional path test for a holding, *Binger* should be deemed to apply equally to both admission as well as exclusion decisions by a trial court faced with late-disclosed testimonial evidence. While I did not

---

[9] What is commonly referred to as the "*Pedroza* test" to discern dictum from holding is as follows: "A holding consists of those propositions along the *chosen decisional path* or paths of reasoning that (1) are actually decided, (2) are based upon the facts of the case, and (3) lead to the judgment." *Pedroza v. State*, 291 So. 3d 541, 547 (Fla. 2020) (emphasis added) (quoting *Yule*, 905 So. 2d at 259 n.10).

disagree with the majority in *Crecelius* that the January 2025 rule changes have negated the effect of *Binger* and now allow courts to strictly enforce their case management orders,[10] I stand by my concern expressed in *Crecelius* that changing the *Binger* standard for the remaining cases in the appellate pipeline[11] "creates unnecessary confusion in the law," 2026 WL 555031, at *33, as well as the

---

[10] As I noted in *Crecelius*, I agreed "with the majority that the *Binger* test stands directly opposed" to the January 2025 rule changes:

> At any point in the last several decades since *Binger*, the Florida Supreme Court could have provided trial courts with the ability to strictly enforce their case management orders. In January 2025, the Florida Supreme Court appears to have done just that. *See In re Amends. to Fla. Rules of Civ. Proc.*, 402 So. 3d 925 (Fla. 2024). As the majority recites, among other significant changes, the supreme court amended the Florida Rules of Civil Procedure to mandate that trial courts *strictly comply* with pretrial orders which stands in direct opposition to *Binger*'s prejudice determination. *Id.* at 931; *see* Fla. R. Civ. P. 1.200(e)(1) (2025) ("Deadlines in a case management order *must be strictly enforced* unless changed by court order." (emphasis added)); *Marine Design Dynamics, Inc. v. All City Constr. Servs., LLC*, 51 Fla. L. Weekly D2653, D2656, —— So.3d ——, ——, 2025 WL 3649646 (Fla. 3d DCA Dec. 17, 2025) (Gooden, J., concurring) ("But these changes [to rule 1.200] are incompatible with *Binger*. The core tension is self-evident: A judge cannot simultaneously 'strictly enforce' the discovery deadlines, as the Rules now demand, while also applying a prejudice analysis, that functionally excuses the violation of that very deadline."); *contra Lugo,* 487 So. 2d at 323 ("*[E]xclusion* of the witness *for failure to strictly comply* with the pretrial order is *indefensible* [under a *Binger* analysis]." (emphasis added)).

2026 WL 555031, at *27.

[11] By "appellate pipeline," I am referring to those cases tried prior to the rule changes effective January 1, 2025, but which are still pending appellate review.

possibility of disparate impact on the parties.[12]  What would have been a clear reversal under *Binger* has now resulted in an affirmance under *Crecelius*.

———————

[12] As I stated in *Crecelius*, "While this particular case [*Crecelius*] results in a 'no harm-no foul' scenario as it is an affirmance whether we apply *Binger* or not, other cases and litigants may not fare as well."  2026 WL 555031, *28.  This case appears to be in the "foul" territory, as it was fully litigated by both sides under the presumption of *Binger*'s applicability yet now is subject to a different result due to the non-application of *Binger*.  Neither party in this case argued that *Binger* should not be applied here, even when given the opportunity to make the argument by a supplemental briefing order; rather, the first time the *Binger* standard was questioned came from comments by this Court during oral argument:

> J. Mize: Counsel, you are doing the same thing in your oral argument that I thought was interesting in the brief, which was **both parties operate under the assumption that we're going to read *Binger* the same way the other five DCAs read *Binger*, and I'm not sure why anybody made that assumption**.

> Reiter (Counsel for Wal-Mart):  Well your honor-

> J. Mize:  Can you give a *Pedroza* analysis on *Binger*?

> Reiter:  Let me start with the, I'm sorry your honor what was the question?

> \* \* \* \*

> J. Mize:  So, if the facts of *Binger* and the decision of *Binger* was about undisclosed testimony that was improperly allowed without considering prejudice to the opposing party, how was anything the supreme court said about what a trial court needs to do as a predicate to excluding testimony not dicta?

> Reiter:  Well, your honor, it's a very interesting perspective and I say that because quite frankly **I've not heard a court call to question this specific analysis of what we have come to characterize as the *Binger* approach**.

\* \* \* \*

J. Mize:  If I am wrong about how I'm reading *Binger* and the other five DCAs were right, tell me how.

Reiter:  Well, your honor, **I would only start from the premise of the fact that many district courts over the course of several years have-**

J. Mize:  I'm not interested in how many, I'm interested in whether they are right, I just told you how I'm looking at *Binger*.  Tell me why I'm wrong.

Reiter:  I'm not suggesting you're wrong.  I guess my question. Not a question, my comment is I'm trying to understand how that would impact the analysis in this case.

\* \* \* \*

Reiter: So I guess the reason why [*Binger* was applied] –and **I'll certainly admit your honor since the trial court applied *Binger* and both sides have looked at *Binger* as the presiding understanding** it's not—and I understand the Court's—your honor's—perspective on this understanding that it's not necessarily that its dicta, not necessarily a holding, I have to go back, you know, with respect to this case.

\* \* \* \*

J. Mize: Do you think that I've mischaracterized whether or not that was actually the holding in *Binger*?

Reiter:  I do not think you have mischaracterized the way *you framed* the holding in *Binger*.

\* \* \* \*

Lee (Counsel for Wynn): I do want to talk about the question of Judge Mize has brought because I knew it was coming my way.  When we look at *Binger*, yes, *Binger* is talking about a pretrial disclosure of

25

---

Jack R. Reiter, Sydney M. Feldman, and Lucia L. Leoni, of GrayRobinson, P.A., Miami, for Appellant.

Brian J. Lee, of Morgan & Morgan, Jacksonville, for Appellee.

---

witnesses, it's a list, and I think one part of it when we are talking about how we look at *Binger* and how we've used it in our appeal, is, is still key[.]

Oral Argument at 00:00:46-00:01:09, 00:02:39-00:03:10, 00:03:56-00:04:23, 00:05:12-00:05:34, 00:06:03-00:06:12, 00:17:33-00:17:55*, Wal-Mart Stores E., LP v. Wynn*, 6D2023-1940 (argued Oct. 22, 2024), https://youtu.be/AdiHyWROzWM (emphasis added).